**Darby L. HAPE, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 63A01–0804–CR–175.

Court of Appeals of Indiana.

March 31, 2009.

Transfer Denied June 16, 2009.

Scott A. Funkhouser, Mt. Vernon, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Matthew Whitmire, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Darby L. Hape was convicted by a jury of Class A felony possession of methamphetamine with the intent to deliver and Class D felony resisting law enforcement and was found to be a habitual offender. The trial court sentenced Hape to an aggregate eighty-year term in the Department of Correction. After trial, the parties learned that the jury, during deliberations, read text messages saved in Hape's cellular telephone that were previously undiscovered by the State and the defense. The cellular telephone was admitted into evidence during trial as part of an exhibit showing the items confiscated from Hape at the time of his arrest. On appeal, Hape raises multiple issues, a number of which pertain to the accidental exposure of the text messages to the jury.

Among other things, we conclude that text messages are intrinsic to the cellular telephones in which they are stored. Therefore, pursuant to Indiana Evidence Rule 606(b), Hape could not impeach the jury's verdict with them. We also conclude, as a matter of first impression in Indiana, that text messages are subject to separate authentication before being admitted into evidence. Here, the lack of proper authentication was not fundamental error because the text messages were harmless. We affirm Hape's convictions for possessing methamphetamine and resisting law enforcement. However, the State concedes that the evidence is insufficient to support his habitual offender adjudication, and we reverse the trial court's finding in this regard and remand for the trial court to vacate Hape's thirty-year habitual offender sentencing enhancement. Affirmed in part and reversed in part.

### Facts and Procedural History

The facts most favorable to the State are as follows. In April 2007, Hape was wanted by police on several outstanding warrants. On April 19, 2007, police received a tip that Hape planned to pick up his girlfriend that day from an apartment in Petersburg, Indiana. Officers positioned themselves in the area and saw Hape enter the apartment complex. He drove a gold truck that matched the description given by the tipster. When Hape tried to exit the apartment complex in his truck, police blocked the road. An officer activated his emergency lights and exited his vehicle with a firearm drawn. Hape fled in the other direction. Another officer, with firearm drawn, had blocked the other end of the road, but Hape drove around the officer. A high-speed chase ensued. During the chase, Hape drove in excess of one hundred miles per hour and, at times, drove into the oncoming traffic lane. Eventually, following an approximately forty-minute pursuit, officers were able to apprehend him after Hape drove into a flooded area.

After removing Hape from his truck, the officers searched him and recovered a black container from his pocket. Inside the black container were two bags containing additional bags of methamphetamine. In total, there were seven individual bags

of methamphetamine inside the container. Officers recovered another bag holding two individual bags containing methamphetamine from Hape's pocket. The bags found in the black container contained an aggregate of 3.14 grams of methamphetamine. The bags found in Hape's pocket held an aggregate of 5.12 grams of methamphetamine. Also recovered during the search of Hape and his vehicle were $636 in cash, two cellular telephones, and a box of plastic bags. The cash included six one-hundred dollar bills. When officers searched the bed of Hape's truck, they found a black trash bag emitting a cloud of smoke and an ammonia smell. Inside the trash bag were two cans of starting fluid, two blackened plastic soft drink bottles with holes in their caps, a label to a lithium battery, the internal components of lithium batteries, plastic tubing, a box of sandwich bags, and a coffee or spice grinder.

The State charged Hape with possession of methamphetamine with the intent to deliver as a Class A felony,[1] possession of methamphetamine as a Class C felony,[2] operating a vehicle after privileges are forfeited for life, a Class C felony,[3] resisting law enforcement as a Class D felony,[4] possession of marijuana as a Class A misdemeanor,[5] and possession of marijuana as a Class D felony.[6] The State later added an additional count, alleging that Hape was a habitual offender.[7]

The State successfully sought an order *in limine* preventing the introduction of evidence that the officers fired at Hape during the chase. Appellant's App. p. 5, 266–67. Hape successfully sought an order *in limine* preventing the State from introducing evidence of his prior bad acts, other than for impeachment purposes. *Id.* at 6. The case proceeded to a jury trial. On the first day of trial, the State dismissed the charges relating to possession of methamphetamine and marijuana and operating a vehicle after privileges are forfeited for life. *Id.*

During its opening argument, the defense suggested that the truck driven by Hape and in which the "potential laboratory components" were found did not actually belong to Hape. Tr. p. 174. Later during the trial, defense counsel elicited from a witness on cross-examination that Hape was not the registered owner of the truck. *Id.* at 280. The State then questioned the witness, asking whether the truck was stolen. *Id.* at 357. Hape, by counsel, objected to the question and moved for a mistrial. *Id.* at 357–58. The trial court overruled the objection, finding that Hape had opened the door to the question of the truck's ownership, and denied the motion for mistrial. *Id.* at 361–62. The parties then agreed to the following stipulation, which the trial court read to the jury:

> The parties agree that the accused, Darby Hape, has not been charged with auto theft or possession of a stolen vehicle. The reason for that is because upon investigation after the truck was reported stolen, it appeared possible that [the truck's registered owner] had in fact, loaned the truck to Mr. Hape.

*Id.* at 372–73.

After the jury returned guilty verdicts on the remaining counts, the trial court

1. Ind.Code § 35–48–4–1.1(a)(2)(C), (b)(1).

2. Ind.Code § 35–48–4–6.1(b)(1)(A).

3. Ind.Code § 9–30–10–17.

4. Ind.Code § 35–44–3–3(a)(3), (b)(1)(A).

5. Ind.Code § 35–48–4–11(1).

6. I.C. § 35–48–4–11(1)(ii).

7. Ind.Code § 35–50–2–8.

entered judgments of conviction for Class A felony possession of methamphetamine with the intent to deliver and Class D felony resisting law enforcement. The trial court then conducted a separate habitual offender phase before the jury, and the jury found that Hape was a habitual offender. After a sentencing hearing, the trial court sentenced Hape to fifty years in the Department of Correction for possessing methamphetamine with the intent to deliver and three years for resisting law enforcement, to run concurrently with each other, and thirty years for being a habitual offender, to run consecutively with the other sentences. Appellant's App. p. 477–78.

After trial, Hape learned that, during the jury's deliberations, jurors were able to turn on one of the cellular telephones taken from him during the search incident to his arrest. *Id.* at 588. Text messages were saved on this telephone, including the following text message from "Brett":

> Hey man do you think that you can do something 4 one of what I gave you the other night. I could care less about ours right now but my other dude keeps asking & I don't even have the funds to pay him back guess I will freakin tell him to get it off the water tower.

*Id.* at 501. Hape filed a motion that included requests for a mistrial, correction of error, and permission to poll the jury regarding the prejudicial impact of the text messages upon its deliberations. *Id.* at 506–15. The trial court denied his motion, and Hape now appeals.

## Discussion and Decision

Hape raises multiple issues on appeal. First, he alleges error on various grounds related to the accidental exposure of the jury to text messages saved on a cellular telephone that was introduced into evidence. He contends that the trial court erred in denying his motion to poll the jury about the effect that the text messages had upon the verdict, and he contends that he suffered fundamental error when the jury, during deliberations, discovered the text messages. He alleges that the accidental introduction of the text messages violated the Confrontation Clause, Indiana hearsay rules, and the requirement that evidence be properly authenticated before admission. Second, Hape makes several claims of error regarding the trial court's rulings on the admissibility of pieces of evidence: the trial court erred in admitting opinion testimony by an officer regarding the amount of methamphetamine that drug users and drug dealers typically possess; the trial court abused its discretion in refusing to admit video evidence depicting the police chasing and firing guns while trying to apprehend him; and the trial court improperly admitted evidence of prior bad acts in violation of Indiana Evidence Rule 404(b). Third, Hape argues that the evidence is insufficient to support his conviction for Class A felony possession of methamphetamine with the intent to deliver and to support his habitual offender adjudication. Fourth, Hape contends that the trial court erred in denying his motion for change of judge. In the alternative, he argues that, even though his motion was not timely filed, the trial judge should have disqualified himself. Finally, Hape challenges his sentence, arguing that the trial court abused its discretion in identifying aggravators and mitigators and that his aggregate eighty-year sentence is inappropriate.

## I. The Accidental Admission of Text Messages

Hape's first argument, that the jury should not have been exposed to incriminating text messages saved inside of a cellular telephone admitted into evidence with-

out objection. He argues that this error warrants a new trial.[8]

## A. Motion to Correct Error: Jury Poll Regarding Text Message

Hape contends that the trial court erred in denying his motion to poll the jury about the effect that the text messages had upon the verdict. He argues that the trial court's denial of this motion "deprived [him] of his ability to question and poll jury members on the issue of prejudicial error." Appellant's Br. p. 13.

■■■ Indiana Evidence Rule 606(b) provides for the polling of a jury as part of an inquiry into the validity of a verdict in limited circumstances. The rule provides, in part:

> **Inquiry into Validity of Verdict or Indictment.** Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify . . . on the question of whether extraneous prejudicial information was improperly brought to the jury's attention[.]

Ind. Evidence Rule 606(b). Thus, as a general matter, a jury's verdict may not be impeached by evidence from the jurors who returned it. *Stephenson v. State*, 742 N.E.2d 463, 477 (Ind.2001) (citing *Fox v. State*, 457 N.E.2d 1088, 1092 (Ind.1984)). However, "extrinsic or extraneous material brought into deliberation may be grounds for impeaching a verdict where there is a substantial possibility that such extrinsic material prejudiced the verdict." *Id.* The burden rests with the defendant to prove that material brought into the jury room was extrinsic. *Id.* The burden then shifts to the State to prove the introduction of extrinsic material harmless. *Id.* Absent a "substantial possibility that [the] . . . material prejudiced the verdict," its introduction is harmless, and jurors may not impeach the verdict by testifying about it. *Id.*

Hape argues that he should have been permitted to inquire into the validity of the jury's verdict by asking members of the jury about the prejudicial effect of the discovery of the saved text messages in his cellular telephone. The State contends that the text messages did not constitute extraneous prejudicial information and that Hape therefore fails to meet his initial burden in attempting to impeach the jury verdict with testimony about the messages.

■■■ Hape's argument fails because the text messages are intrinsic to the cellular telephone. The jury discovered the text messages at issue by turning on a cellular telephone that was admitted into evidence without objection. In *Bradford v. State*, our Supreme Court addressed a defendant's claim that jurors improperly obtained and considered extraneous evidence by conducting extrajudicial experiments. The Court cited with approval the rule that experiments conducted by the jury improperly inject extraneous information into deliberations when the results "amount[ ] to additional evidence supplementary to that introduced during the tri-

---

8. Hape also argues, in a one-sentence footnote, that he is entitled to a new trial because the text messages constitute "newly discovered evidence of a highly prejudicial nature[.]" Appellant's Br. p. 12 n. 2 (citing *Searcy v.* *Searcy*, 583 N.E.2d 1216, 1225 (Ind.Ct.App. 1991), *trans. denied* ). Because he has not developed this argument, it is waived. Ind. Appellate Rule 46(A)(8)(a).

al." *Bradford v. State,* 675 N.E.2d 296, 304 (Ind.1996) (quotation omitted), *reh'g denied; Kennedy v. State,* 578 N.E.2d 633, 641 (Ind.1991) (citing *In re Beverly Hills Fire Litig.,* 695 F.2d 207 (6th Cir.1982)). Here, turning on the telephone did not constitute an extrajudicial experiment that impermissibly exposed the jury to extraneous information. First, the text messages themselves are not extraneous to the cellular telephone. We agree with the State that text messages are intrinsic to the cellular telephones in which they are stored. "Intrinsic," as defined by Black's Law Dictionary, means "[b]elonging to a thing by its very nature; not dependent on external circumstances; inherent; essential." Black's Law Dictionary 842 (8th ed.2004). We conclude that the text messages at issue here are part and parcel of the cellular telephone in which they were stored, just as pages in a book belong to the book by their very nature, and thus they are intrinsic to the telephone. Indeed, Hape concedes that "the messages are inextricable from the phones themselves." Appellant's Br. p. 16. Further, we decline to characterize the simple act of turning on a cellular telephone as an experiment that might yield extraneous information. Turning on a device that is made to be turned on constitutes a permissible examination of the evidence before the jury. Pursuant to Indiana Evidence Rule 606(b), Hape may not impeach the jury's verdict with affidavits regarding the text messages. The trial court did not abuse its discretion in denying Hape's motion to poll the jury.

## B. Fundamental Error

▉▉▉▉ Hape also argues that the introduction of the text messages violated the

Confrontation Clause to the Sixth Amendment, constituted inadmissible hearsay, and that the cellular telephones and text messages were not properly authenticated. Because no objection was raised to the trial court regarding the introduction of the cellular telephones or text messages, Tr. p. 239–42, we may review Hape's claims only for fundamental error.[9] *See Hopkins v. State,* 759 N.E.2d 633, 638 (Ind.2001). We will only find fundamental error "when the record reveals a clearly blatant violation of basic and elementary principles, where the harm or potential for harm cannot be denied, and [where the] violation is so prejudicial to the rights of the defendant as to make a fair trial impossible." *Jewell v. State,* 887 N.E.2d 939, 942 (Ind.2008). "In determining whether a claimed error denies the defendant a fair trial, we consider whether the resulting harm or potential for harm is substantial." *Townsend v. State,* 632 N.E.2d 727, 730 (Ind.1994). "The element of harm is not shown by the fact that a defendant was ultimately convicted; rather, it depends upon whether his right to a fair trial was detrimentally affected by the denial of procedural opportunities for the ascertainment of truth to which he otherwise would have been entitled." *Id.*

### 1. Confrontation Clause

▉▉▉▉ The Sixth Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him...." This right of confrontation is applicable to the states through the Fourteenth Amendment. *Pointer v. Texas,* 380 U.S. 400, 406, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965); *Howard*

9. We observe that the unique facts of this case would make it impossible for the trial court to "abuse its discretion" in allowing the jury to see the text messages because the trial court was not alerted to the existence of the messages nor was it given the opportunity to admit or exclude this evidence.

*v. State,* 853 N.E.2d 461, 464 (Ind.2006). The essential purpose of the Sixth Amendment's "Confrontation Clause" is to ensure that the defendant has the opportunity to cross-examine the witnesses against him or her. *Howard,* 853 N.E.2d at 465. The Supreme Court has held that "the admission of a hearsay statement made by a declarant who does not testify at trial violates the Sixth Amendment if (1) the statement was testimonial and (2) the declarant is unavailable and the defendant lacked a prior opportunity for cross-examination." *Id.* (citing *Crawford v. Washington,* 541 U.S. 36, 68, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004)). As the Indiana Supreme Court has explained, "A critical portion of the [*Crawford*] Court's holding was the phrase 'testimonial evidence.' " *Id.* Evidence is testimonial if it "is one given or taken in significant part for purposes of preserving it for potential future use in legal proceedings." *Frye v. State,* 850 N.E.2d 951, 955 (Ind.Ct.App.2006), *trans. denied.*

■■ Here, Hape challenges the admission of text messages that were apparently sent to his cellular telephone by a person named "Brett." "Brett" did not testify at trial, and Hape contends that the admission of the text messages violated his right under the Confrontation Clause to have an opportunity to cross-examine "Brett." Hape cites to the following language in support of his claim that the text messages are testimonial and therefore fall within the protections of the Confrontation Clause: "In evaluating whether a statement is for purposes of future legal utility, the motive of the questioner, more than that of the declarant, is determinative[.]" *Id.* He claims that, because police officers seized Hape's cellular telephones in preparation for criminal proceedings, the text messages saved on one telephone are rendered testimonial. Appellant's Br. p. 15.

The relevant question, however, is the purpose *for which the statements were made.* There is no reason to believe that the statements about which Hape complains were made by "Brett" with any intention that they be used in future legal proceedings. Further, the person to whom the statements were made was Hape, and he did not collect them for the purposes of any future legal utility. The Confrontation Clause does not act to bar these text messages because they are not testimonial.

### 2. Authentication

Hape contends that the cellular telephones and the text messages were not properly authenticated and that their admission constituted fundamental error. Although the State does not give this issue separate treatment, it appears to respond (as a part of its argument that text messages stored in telephones are not extrinsic material) that text messages need not be authenticated separately from the telephones in which they are stored.

■■■ To lay a foundation for the admission of evidence, the proponent of the evidence must show that it has been authenticated. *Bartlett v. State,* 711 N.E.2d 497, 502 (Ind.1999). "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Ind. Evidence Rule 901(a). Indiana Evidence Rule 1002 provides that an original writing or recording is admissible in evidence to prove the content of the writing or recording. Letters and words set down by electronic recording and other forms of data compilation are included within this rule:

> "Writings" and "recordings" consist of letters, words, sounds, or numbers, or their equivalent, set down by handwriting, typewriting, printing, photostating,

photographing, magnetic impulse, mechanical or electronic recording, or other form of data compilation.

Ind. Evidence Rule 1001(1). Writings and recordings must be authenticated pursuant to Indiana Evidence Rule 901(a) before being admitted. *See Bone v. State,* 771 N.E.2d 710, 716 (Ind.Ct.App.2002) (reviewing whether data from defendant's computer was sufficiently authenticated).

We turn first to the question of whether the cellular telephones were properly authenticated. The cellular telephones were admitted into evidence as a part of State's Exhibit 26, a sealed plastic bag containing items recovered from Hape at the time of his arrest. Tr. p. 234–36, 239–40; Ex. p. 18. Before the cellular telephones were admitted into evidence, a police officer testified about how the items seized from Hape, which included the telephones, were catalogued and tracked. Tr. p. 232–33, 236. The officer identified the exhibit on the record, *id.* at 239, and testified that he had personally initialed the seals across the top and side of the bag. *Id.* at 239–40. The State presented sufficient evidence to authenticate that the cellular telephones were the telephones retrieved from Hape, and their admission into evidence did not constitute error.

We next examine whether the text messages required a separate authentication from the properly admitted cellular telephones. The parties have not directed us to any Indiana cases involving discussion of the authentication of text messages generated and stored in telephones, and our research has not unearthed any such cases. However, we have previously discussed the necessary authentication of data contained within a computer in order for the data to be admissible evidence. In *Bone v. State,* the defendant took his personal computer to a computer repair shop. The repairperson stumbled upon files containing child pornography and contacted the police. On appeal from convictions stemming from his possession of these computer files, the defendant alleged that the computer files, or their data contents, were inadequately authenticated. We agreed with the State that "the authentication requirement [of Indiana Evidence Rule 901(a) ] is satisfied by a showing that the images contained in the exhibits were recovered from [the defendant's] computer." *Bone,* 771 N.E.2d at 716. Requiring "testimony before the trial court ... sufficient to establish the authenticity of the exhibits as depicting the images contained in [the defendant's] computer equipment," *id.* at 716–17, we indicated that authentication of the data saved in a computer is a condition precedent to the admission of the data recordings.

We see no reason why the writings or recordings generated and saved inside of a cellular telephone should be exempted from the same authentication requirement. The proponent of a piece of evidence has to decide the purpose for which the evidence is offered. Even though we have determined that a text message stored in a cellular telephone is intrinsic to the telephone, a proponent may offer the substance of the text message for an evidentiary purpose unique from the purpose served by the telephone itself. Rather, in such cases, the text message must be separately authenticated pursuant to Indiana Evidence Rule 901(a). *See also Lorraine v. Markel Am. Ins. Co.,* 241 F.R.D. 534, 546 (D.Md.2007) (observing that federal courts have recognized Federal Rule of Evidence 901(b)(4) as a means to authenticate electronic data, including text messages); *Dickens v. State,* 175 Md.App. 231, 927 A.2d 32, 37 (2007) (reviewing whether text messages saved on a cellular telephone were properly authenticated); *State v. Taylor,* 178 N.C.App. 395, 632 S.E.2d

218, 230–31 (2006) (reviewing whether the State properly authenticated text messages).

■■■■ Here, had the State intentionally offered the text messages into evidence, the purpose for doing so would have been for an evidentiary purpose different than that of the cellular telephones. The telephones were offered into evidence for the purpose of showing that Hape possessed them. The purpose of offering the text messages would have been to show that Hape communicated with certain individuals or to reveal the content of his communications. Nevertheless, the presentation of the text messages to the jury without proper authentication did not rise to the level of fundamental error because the jury's exposure to the text messages was harmless error. *See Stephenson*, 742 N.E.2d at 477. Unlike cases in which the appellate court has reversed convictions after evidence was accidentally provided to a jury because the evidence against the defendant is otherwise circumstantial, *Franklin v. State*, 533 N.E.2d 1195, 1196 (Ind.1989); *Schlabach v. State*, 842 N.E.2d 411, 416–17 (Ind.Ct.App.2006), *trans. denied*, here the evidence against Hape is strong. Having reviewed the evidence presented to the jury, we conclude that there is not a substantial possibility that the text messages prejudiced the verdict. *See Stephenson*, 742 N.E.2d at 477. The evidence against Hape with regard to possessing methamphetamine with the intent to deliver was compelling. Trooper Gadberry, whose testimony we review later in this opinion and find admissible, testified at trial that Hape possessed approximately *thirty-three doses* of methamphetamine at the time of his arrest. Tr. p. 341. The methamphetamine was packaged in nine

plastic bags. *Id.* at 347. Further, Hape had a large amount of cash in his possession and two cellular telephones. *Id.* at 239–40. The amount of methamphetamine and its packaging provided ample evidence that Hape possessed methamphetamine with the intent to deliver. Thus, in the context of the entirety of the evidence before the jury, the accidental introduction of the text messages to the jury was harmless. *See Stephenson*, 742 N.E.2d at 477.[10] Thus, the lack of proper authentication of the text messages does not require reversal.

## II. Rulings Made by the Trial Court Regarding the Admissibility of Evidence

■■■■ Hape makes several claims of error regarding the trial court's rulings on the admissibility of various pieces of evidence. Generally, a trial court's ruling on the admissibility of evidence is reviewed for an abuse of discretion. *Combs v. State*, 895 N.E.2d 1252, 1255 (Ind.Ct.App.2008) (citing *McHenry v. State*, 820 N.E.2d 124, 128 (Ind.2005)), *trans. denied*. We will reverse only where the trial court's decision is clearly against the logic and effect of the facts and circumstances. *Id.* (citing *Joyner v. State*, 678 N.E.2d 386, 390 (Ind. 1997), *reh'g denied*). Even if the decision was an abuse of discretion, we will not reverse if the admission of evidence constituted harmless error. *Id.* Error is harmless if "the conviction is supported by substantial independent evidence of guilt as to satisfy the reviewing court that there is no substantial likelihood that the questioned evidence contributed to the conviction." *Cook v. State*, 734 N.E.2d 563, 569 (Ind. 2000), *reh'g denied*.

---

10. Because any error in the introduction of the text messages to the jury was harmless, Hape's fundamental error argument that the text messages constituted inadmissible hearsay also fails.

## A. Admission of Trooper Gadberry's Opinion Testimony

Hape argues that the trial court erred in admitting opinion testimony by Trooper Gadberry regarding the amount of methamphetamine that drug users and drug dealers typically possess. He contends that Trooper Gadberry's opinion testimony was improperly admitted because, as a skilled witness rather than an expert witness, Trooper Gadberry was not permitted to testify about opinions based upon information from third parties.

Over Hape's objection, the trial court found Trooper Gadberry to be a skilled witness and allowed him to testify about the amount of methamphetamine that a user typically ingests to get high, information about the different amounts of methamphetamine typically carried by users and dealers, how methamphetamine is packaged and priced for sale, and the process of manufacturing methamphetamine. Tr. p. 337–57. A witness may be qualified as a "skilled witness" under Indiana Evidence Rule 701. *Kubsch v. State*, 784 N.E.2d 905, 922 (Ind.2003). "A skilled witness is a person with a degree of knowledge short of that sufficient to be declared an expert under Indiana Evidence Rule 702, but somewhat beyond that possessed by the ordinary jurors." *Id.* (quotation omitted). Pursuant to Indiana Evidence Rule 701, a skilled witness may provide an opinion or inference that is "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue." Ind. Evidence Rule 701.

■■■ During trial, the State established Trooper Gadberry's heightened degree of knowledge about methamphetamine. Trooper Gadberry testified as follows regarding his extensive professional experience working with methamphetamine

cases: at the time of trial he had been a trooper for eight years, during that time he worked on two hundred fifty to three hundred methamphetamine cases, he worked for a period of time as a member of a clandestine methamphetamine laboratory clean-up team and was trained for this by the Drug Enforcement Administration, and he worked on the clean-up of between two hundred fifty and three hundred fifty methamphetamine laboratories. Tr. p. 330–331. Given Trooper Gadberry's professional background, the trial court did not err in finding that he was sufficiently qualified to testify as a skilled witness. *See Davis v. State*, 791 N.E.2d 266, 269 (Ind.Ct.App.2003) (long-time police officer with over six years of experience investigating narcotics crimes was properly qualified to testify as a skilled witness regarding the packaging and amounts of cocaine related to dealing), *reh'g denied, trans. denied.*

Hape contends that Indiana Evidence Rule 701(a) bars the admission of Trooper Gadberry's skilled witness testimony because the opinion testimony was not rationally based upon Trooper Gadberry's own perception. *See* Evid. R. 701(a). The testimony at issue pertains to the difference in the amounts of methamphetamine that are typically possessed by users versus dealers. *See* Tr. p. 338–41. In response to a preliminary question by defense counsel, Trooper Gadberry testified that he based his knowledge of how much methamphetamine is necessary to make someone high upon "[s]peaking with confidential informants; also people that [he had] arrested." *Id.* at 337. Hape then objected to Trooper Gadberry's testimony on this point, contending that the officer relied upon inadmissible hearsay in reaching an opinion. *Id.* The State responded that Trooper Gadberry was a skilled witness who could testify to this specialized

knowledge, and the trial court agreed. *Id.* at 338. On appeal, Hape argues that only an expert witness, not a skilled witness, can rely upon information learned through interactions with drug users, dealers, and informants and that allowing Trooper Gadberry to testify about "dose and dealing amounts, how much it takes for someone to get high, and the relationship between quantity [of methamphetamine] and personal use" constituted reversible error. Appellant's Br. p. 27.

■ First, we observe that, due to his professional experiences, Trooper Gadberry may well have qualified as an expert witness had the State chosen to seek such a designation. *See generally Stidham v. State,* 637 N.E.2d 140, 143 (Ind.1994) (officer qualified as expert on blood spatters); *Burnett v. State,* 815 N.E.2d 201, 204–06 (Ind.Ct.App.2004) (officer qualified as expert on fingerprint examination), *reh'g denied.* However, his qualification as a skilled witness rather than an expert witness has no practical bearing upon our analysis under the facts of this case. Under either designation, it was improper for Trooper Gadberry to testify regarding "how much methamphetamine it takes for a person to get high[.]" Tr. p. 336; 338. Such information about the effect of a chemical substance upon a person's body is scientific in nature. Only an expert witness is permitted to testify regarding scientific knowledge, but in order to do so the expert witness must "satisf[y] [the trial court] that the scientific principles upon which the expert testimony rests are reliable." Ind. Evidence Rule 702. Trooper Gadberry did not testify as to any scientific principles or methodology used to reach his conclusion. Tr. p. 338. Thus, under the evidentiary rules pertaining to expert and skilled witnesses, the admission of testimony regarding the amount of methamphetamine necessary to create a high was improper.

■ Nevertheless, this error was harmless. Trooper Gadberry testified that it takes "[a]pproximately a quarter gram" of methamphetamine for someone to get high. *Id.* at 338. While the trial court improperly permitted Trooper Gadberry to testify about the physiological effect of a particular amount of the drug upon an individual, as we conclude below, it was perfectly acceptable for Trooper Gadberry to testify about a typical dose amount of methamphetamine and how much methamphetamine is typically packaged in a baggie. *Id.* at 339; 341. Hape's conviction for possession of methamphetamine with the intent to deal is supported by substantial independent evidence of guilt, and this error was therefore harmless. *Cook,* 734 N.E.2d at 569.

■ Trooper Gadberry's testimony regarding "dose and dealing amounts" and "the relationship between quantity [of methamphetamine] and personal use" was properly admitted. Appellant's Br. p. 27. Trooper Gadberry garnered this specialized knowledge during his eight years of experience working as an Indiana State Trooper. Tr. p. 330–32 (detailing Trooper Gadberry's professional experience with methamphetamine); 334 ("Now going back in your eight (8) years, has [the cost of a gram of methamphetamine] been at approximately that rate for the entire eight (8) years?"); 336 ("Now we talked about approximately a hundred possession cases that you have worked. In terms of encountering persons who possess methamphetamine, what is a typical or ordinary amount of methamphetamine that you would encounter in a possession case?"); 336 ("Now based on your training and experience, do you have some idea.... [D]o you feel like you're qualified to give the jury some idea of how much metham-

phetamine it takes for a person to get high?"); 339 ("In your eight (8) years, in terms of the possession cases we've talked about uh, have many of those possession cases been actually pulling methamphetamine off of the pockets of the person of the, the suspect? . . . What type of quantities have those cases that we're talking about ranged in terms of methamphetamine?"); 339 ("Have you seen and had experience with people selling methamphetamine in quarter gram quantities?"); 340 ("Um, now with respect to our possession cases we're talking about um, the full range of cases, how rare is it to encounter someone who actually has eight plus grams of methamphetamine in their pocket?"). His opinion testimony about the amount and packaging of the methamphetamine seized from Hape was rationally based upon his observation of the drugs in light of this experience. *Davis*, 791 N.E.2d at 269 (The testifying officer's "opinions and inferences were based on his personal experience as an investigator; thus, his testimony was rationally based on his perception."). Because Trooper Gadberry's opinion testimony was helpful to the determination of a fact at issue (Hape makes no argument that it was not), the trial court did not abuse its discretion in admitting this evidence.

## B. Refusal to Admit Video of the Police Chase

■ Hape argues that the trial court abused its discretion in refusing to admit video evidence depicting police chasing him and firing guns while trying to apprehend him.[11] During trial, Hape made an offer of proof in support of his request that the trial court reconsider its ruling *in limine* pertaining to the video of the police chase. Tr. p. 368–70. After eliciting testimony that officers fired upon Hape's fleeing truck at least twenty times during the chase, defense counsel made the following argument: "Your honor, I think it's relevant that the defendant um, was fleeing from officers, unarmed and that his uh, vehicle was fired upon. I think it goes to the issue of, of why he fled further, because he was afraid." *Id.* at 369–370. The trial court refused to admit the evidence, finding that the prejudice of the video would outweigh its probative value. *Id.* at 370.

The trial court did not abuse its discretion in refusing to admit this video. As defense counsel explained to the trial court, the video's probative value would have been to show the jury a possible explanation for Hape's lengthy flight from the officers after initially fleeing. *Id.* at 370 ("I think it goes to the issue of, of why he fled further, because he was afraid."). However, why Hape decided to lead the officers on a forty-five minute high-speed chase, rather than a shorter one, is irrelevant to the question of whether he resisted law enforcement as a Class D felony. *See* Ind.Code § 35–44–3–3(a)(3), (b)(1)(A). Hape resisted law enforcement when he began intentionally fleeing in his truck from officers who were visibly and audibly ordering him to stop. The trial court did not abuse its discretion in refusing to admit the video into evidence.

**11.** Hape actually argues that "it was reversible error for the trial court to grant the State's Motion in Limine keeping the police shooting video out of evidence." Appellant's Br. p. 31. However, because "[g]ranting a motion in limine does not determine the ultimate admissibility of the evidence ... [and] the purpose of a ruling in limine is to prevent the presentation of potentially prejudicial evidence until the trial court can rule on the admissibility of the evidence in the context of the trial itself," his argument is more properly framed as whether the trial court abused its discretion by refusing to admit the evidence at trial. *Francis v. State,* 758 N.E.2d 528, 533 (Ind.2001).

Further, even if the trial court had erred by refusing to admit this video, any error was harmless. Hape admits to fleeing in order to resist law enforcement. His trial strategy was to admit to possessing methamphetamine and resisting law enforcement while arguing that he did not intend to deal in methamphetamine. Tr. p. 172. During opening argument, defense counsel made the following statements to the jury: "Darby Hape is guilty of resisting law enforcement and fleeing[,]" *id.*, "[W]e have direct evidence that he fled from the police[,]" *id.* at 175, and "he ran from the police," *id.* at 176. During closing argument, defense counsel maintained the same strategy and made the following admissions to the jury: "[H]e's guilty of fleeing from the police[,]" *id.* at 398, "The evidence is clear that [Hape] had run from the police, at a high speed chase[,]" *id.*, and "Find him guilty of fleeing from the police," *id.* at 409. Any error in refusing to admit the video was harmless.

## C. Admission of Evidence of Prior Bad Acts

Hape next argues that the trial court improperly admitted evidence of prior bad acts in violation of Indiana Evidence Rule 404(b). Specifically, he contends that the trial court should have granted his motion for a mistrial after the State elicited testimony indicating that he may have stolen the truck in which he fled from the arresting officers. He also contends that the trial court should have granted his motion for mistrial because the State elicited testimony that the police initially sought Hape because of outstanding warrants.

 Indiana Evidence Rule 404(b) provides, in relevant part, that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." The rationale for the rule is that the jury is precluded from making the

"forbidden inference" that the defendant has a criminal propensity and therefore committed the charged conduct. *Marshall v. State*, 893 N.E.2d 1170, 1174 (Ind.Ct. App.2008). Before allowing the State to introduce evidence of a defendant's prior bad acts, the trial court must consider whether the evidence is offered to prove something other than the defendant's bad character or propensity to commit the charged crime. *McIntyre v. State*, 717 N.E.2d 114, 120 (Ind.1999) (citing Ind. Evidence Rule 404(b), *reh'g denied; Ross v. State*, 676 N.E.2d 339 (Ind.1996)). If the evidence is being offered for a permissible purpose, the trial court must then decide whether its probative value outweighs its prejudicial effect. *Id.* (citing Ind. Evidence Rule 403; *Ross*, 676 N.E.2d at 346). We review a trial court's evidentiary rulings for abuse of discretion. *Id.* Evidence that is otherwise inadmissible under Indiana Evidence Rule 404(b) may become admissible where the defendant "opens the door" to questioning on that evidence. *Jackson v. State*, 728 N.E.2d 147, 152 (Ind. 2000).

 A mistrial is an extreme remedy that is warranted only when less severe remedies will not satisfactorily correct an error. *Warren v. State*, 725 N.E.2d 828, 833 (Ind.2000). We review a trial court's ruling on a motion for mistrial for abuse of discretion. *Francis v. State*, 758 N.E.2d 528, 532 (Ind.2001).

### 1. Reference to Stolen Truck

 During trial, the State elicited testimony from a police officer indicating that Hape may have stolen the truck in which he fled from the arresting officers. The following relevant exchange occurred between the State and the officer:

Q. Bill uh, at the time you all were looking for Mr. Hape, and, and there was some testimony earlier. This may

996

be an omitted question. But I think there was some question. [Defense counsel] talked about the fact that this truck was not Mr. Hape's. Is that right?

A. Yes.

Q. Alright. Was the truck reported stolen at some point?

Tr. p. 357. Defense counsel immediately objected to this line of questioning and orally moved for a mistrial. *Id.* at 357–58. In response, the State argued that Hape opened the door to this evidence. The trial court found that the issue of the truck's ownership had been brought before the jury by Hape, *id.* at 362, and also determined that any error could be cured by the following stipulation, which the court read to the jury:

> The parties agree that the accused, Darby Hape, has not been charged with auto theft or possession of a stolen vehicle. The reason for that is because upon investigation after the truck was reported stolen, it appeared possible that [the truck's owner] had, in fact, loaned the truck to Mr. Hape.

*Id.* at 362, 373.

We agree with the trial court that Hape opened the door to questioning related to the truck's ownership and the circumstances surrounding Hape's possession of it. Hape brought up the issue of the truck's ownership twice during trial in the presence of the jury. During opening argument, defense counsel presented the following argument:

> You're going to find that there are potential laboratory components in the back of the truck. And he keeps saying Mr. Hape's truck. Mr. Hape was driving the truck, but there will be no evidence presented by the State to show that Mr. Hape owned that truck.... There will be no evidence to show that that truck was titled in his name.

*Id.* at 174. Later, while cross-examining a police officer, the following exchange took place between defense counsel and the witness:

Q. Was the vehicle registered to Darby Hape?

A. No. It was not.

*Id.* at 280. With these mentions by the defense of the truck's ownership, the defense opened the door to the State's subsequent question about how the truck came into Hape's possession.

Nevertheless, in response to Hape's objection to this question and motion for mistrial, the State agreed to a stipulation informing the jury that Hape was not charged with auto theft and may have had permission to possess the truck. *Id.* at 373. The trial court read this stipulation to the jury for the purpose of curing any error caused by the State's question referencing truck theft. *Id.* at 362, 373. In fact, defense counsel at that time agreed that the stipulation cured any error. *Id.* at 364 ("THE COURT: That cure it up for you. [DEFENSE COUNSEL]: That cures it."). We conclude that any error caused by the State's question was cured by the stipulation read to the jury by the trial court. *Id.* at 373. The trial court did not abuse its discretion in denying Hape's motion for mistrial.

### 2. Reference to Warrants for Hape's Arrest

 Hape also contends that the trial court erred in denying his motion for mistrial because the State elicited testimony that Hape had outstanding warrants at the time of his arrest for the instant offenses. *See id.* at 178 ("I was, I understood that there were uh, outstanding warrants for Mr. Hape out of Dubois and Pike County. I believe for possibly uh, missing a court date."). However, Hape did not make this argument to the trial court in

support of his motion for mistrial, *id.* at 358–362, and he may not raise it for the first time on appeal, *King v. State,* 799 N.E.2d 42, 47 (Ind.Ct.App.2003) (citing *Jackson v. State,* 712 N.E.2d 986, 988 (Ind. 1999)), *trans. denied.*

 In any event, any error in this regard was invited by Hape because defense counsel informed the jury during opening statement that Hape was wanted by police because he "missed a court date." Tr. p. 175 ("We have a guy whose [sic] been on the loose, whose [sic] been wanted by the police, cause he missed a court date....."). "A party may not invite error, then later argue that the error supports reversal, because error invited by the complaining party is not reversible error." *Booher v. State,* 773 N.E.2d 814, 822 (Ind. 2002) (quotation omitted). Hape's claim of error in this regard fails.

### III. Sufficiency of the Evidence

 Hape next argues that the evidence is insufficient to support his conviction for Class A felony possessing methamphetamine with the intent to deliver and to support his habitual offender adjudication. When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State,* 867 N.E.2d 144, 146 (Ind.2007). It is the factfinder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. *Id.* To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider only the evidence most favorable to the trial court's ruling. *Id.* Appellate courts affirm the conviction unless no reasonable factfinder could find the elements of the crime proven beyond a reasonable doubt. *Id.* The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict. *Id.* at 147.

### A. Conviction for Possession of Methamphetamine With Intent to Deliver

 Hape argues that the evidence is insufficient to support his conviction for Class A felony possession of methamphetamine with the intent to deliver. As charged, in order to convict Hape of this offense, the State had to prove that Hape "possesse[d], with intent to: ... deliver ... methamphetamine, pure or adulterated" and that "the amount of the drug involved weigh[ed] three (3) grams or more[.]" Ind.Code § 35–48–4–1.1(a)(2)(C), (b)(1); Appellant's App. p. 33.

 Hape contends that because the text messages were inadmissible, his conviction cannot stand because the rest of the evidence is insufficient to support his conviction for possession of methamphetamine with the intent to deliver. We have already determined that the admission of the text messages was harmless error; that is, that the conviction is supported by substantial independent evidence of guilt such that there is no substantial likelihood that the questioned evidence contributed to the conviction. *Cook,* 734 N.E.2d at 569. Trooper Gadberry, whose testimony we have already found admissible, testified at trial that Hape possessed approximately thirty-three doses of methamphetamine at the time of his arrest. Tr. p. 341. The methamphetamine was packaged in nine plastic bags. *Id.* at 347. Further, Hape had a large amount of cash in his possession and two cellular telephones. "Possession of a substantial amount of narcotics constitutes circumstantial evidence of intent to deliver," and "[i]f the quantity is such that it could not be personally consumed or used, then an inference of a

predisposition to sell can reasonably be drawn." *Goodner v. State,* 685 N.E.2d 1058, 1062 n. 4 (Ind.1997). The amount of methamphetamine, the packaging of the drugs in multiple bags, and Trooper Gadberry's testimony are sufficient to prove Hape's intent to deliver the methamphetamine. *Id.* at 1062 (finding evidence of intent to deliver cocaine sufficient where defendant possessed 8.25 grams, a larger amount of cocaine than a user would generally keep for personal use, and the drug was packaged in nine separate bags). Hape's arguments on appeal regarding the packaging of the drugs and his intent are merely requests that we reweigh the evidence, which we cannot do.

Hape next contends that the evidence is unclear about whether the methamphetamine in his possession was diluted by cutting agents and that there is, therefore, insufficient evidence that he possessed more than three grams of methamphetamine. Our Supreme Court has long rejected this argument, however, holding that "[t]he total weight of the delivered drug and not its pure component is to be considered in prosecutions." *Riley v. State,* 711 N.E.2d 489, 493 (Ind.1999) (quoting *Tobias v. State,* 479 N.E.2d 508, 511 (Ind.1985), *reh'g denied* ); *see also* I.C. § 35–48–4–1.1(a)(2)(C) (criminalizing the possession of "pure *or adulterated* " methamphetamine with the intent to deliver) (emphasis added). Thus, Hape's challenge is unavailing.

Finally, Hape argues that "there is insufficient evidence as to whether the Meth in this case is even a controlled substance." Appellant's Br. p. 24. This argument fails. Indiana Code § 35–48–4–1.1 criminalizes dealing in methamphetamine, and it does not distinguish between pure and adulterated methamphetamine. Evidence was presented that over eight grams of methamphetamine was found in Hape's posses-

sion. Tr. p. 320. Thus, the evidence is sufficient in this regard.

The evidence is sufficient to support Hape's conviction for Class A felony possessing methamphetamine with the intent to deliver.

## B. Habitual Offender Adjudication

Hape next argues that the evidence is insufficient to prove that he had two prior unrelated felonies and that, therefore, there is insufficient evidence that he is a habitual offender. The State concedes in its brief that

[t]he prior unrelated felony convictions used to convict [Hape] of the habitual offender enhancement were insufficient to satisfy the requirements of the habitual offender statute. The State sought to enhance an offense under I.C. 35–48–4 with only one prior unrelated felony conviction enumerated in I.C. 35–50–2–8(b)(*l* )(3)(C), making the conviction unsupported by the charging information.

Appellee's Br. p. 3 n. 7. We therefore reverse Hape's adjudication as a habitual offender in this cause and his corresponding thirty-year sentence enhancement.

## IV. Bias of Judge

█ Hape next contends that the trial court erred in denying his motion for change of judge. Further, he argues that, even though his motion was not timely filed, the trial judge should have disqualified himself. Indiana Rule of Criminal Procedure 12(B) provides:

In felony and misdemeanor cases, the state or defendant may request a change of judge for bias or prejudice. The party shall *timely* file an affidavit that the judge has a personal bias or prejudice against the state or defendant. The affidavit shall state the facts and the reasons for the belief that such bias or prejudice exists, and shall be accompanied by a certificate from the attorney of

record that the attorney in good faith believes that the historical facts recited in the affidavit are true. The request shall be granted if the historical facts recited in the affidavit support a rational inference of bias or prejudice.

(Emphasis added). Indiana Rule of Criminal Procedure 12(D) supplies the time period for filing such a request and provides, in relevant part:

(1) *Ten Day Rule.* An application for a change of judge ... shall be filed within ten (10) days after a plea of not guilty, or if a date less than ten (10) days from the date of said plea, the case is set for trial, the application shall be filed within five (5) days after setting the case for trial....

(2) *Subsequently Discovered Grounds.* If the applicant first obtains knowledge of the cause for change of venue from the judge ... after the time above limited, the applicant may file the application, which shall be verified by the party specifically alleging when the cause was first discovered, how it was discovered, the facts showing the cause for a change, and why such cause could not have been discovered before by the exercise of due diligence.

We will reverse a trial court's decision on a motion for change of judge under Indiana Criminal Rule 12 only if it is clearly erroneous, that is, if we are left with a definite and firm conviction that a mistake has been made. *McKinney v. State,* 873 N.E.2d 630, 638 (Ind.Ct.App.2007) (citing *Sturgeon v. State,* 719 N.E.2d 1173, 1182 (Ind.1999)), *trans. denied.*

 Hape did not file his motion for change of judge until after the conclusion of his trial. Appellant's App. p. 506. Thus, his motion was not timely filed pursuant to Indiana Rule of Criminal Procedure 12(D)(1). The only exception to timely filing under Indiana Rule of Criminal

Procedure 12(D)(1) is subsequently discovered grounds, Ind.Crim. Rule 12(D)(2), and Hape does not allege any subsequently discovered grounds in this case. Indeed, Hape's argument in support of a change of judge is that the trial judge previously served as a prosecutor in several unrelated criminal cases against him and that the judge was aware of a civil suit filed by Hape against the county. Appellant's App. p. 512; Appellant's Br. p. 32. Hape fails to allege when he first learned of these grounds for a change of judge or why they could not have been discovered earlier in the exercise of due diligence. He therefore waived the argument that he is entitled to a change of judge. *Flowers v. State,* 738 N.E.2d 1051, 1059 (Ind.2000) ("The law is settled that a defendant is not entitled to a change of judge where the mandates of Criminal Rule 12 have not been followed."), *reh'g denied.* The denial of Hape's motion for change of judge was not clearly erroneous.

 Likewise, Hape's contention that the trial court judge should have disqualified himself is unavailing. Our Supreme Court has explained:

A judge has the discretionary power to disqualify himself or herself *sua sponte* whenever any semblance of judicial bias or impropriety comes to the judge's attention. In addition, where a judge harbors actual prejudice in a case, justice requires that a *sua sponte* judicial disqualification from the case be made. The record must show actual bias and prejudice against the defendant before a conviction will be reversed on the ground that the trial judge should have been so disqualified.

*Id.* at 1060–61. A defendant's allegation that a trial judge should disqualify himself or herself "must be seasonably raised." *Calvert v. State,* 498 N.E.2d 105, 107 (Ind. Ct.App.1986). "If a complaining party sits

idly by and awaits the outcome of the proceedings after receiving knowledge of facts that require a trial judge's disqualification, or after the circumstances or law creates a presumption of such knowledge, he will be held to have waived the disqualification and consented to trial by the judge presiding." *Id.* (quotation omitted). Here, Hape offers no explanation for waiting until after his trial to suggest that the trial judge was biased. He therefore consented to trial by the judge presiding and cannot now claim error in the judge's failure to disqualify himself.

## V. Sentence

Finally, Hape challenges his sentence. He argues that the trial court abused its discretion in its identification of aggravators and mitigators and that his aggregate eighty-year sentence is inappropriate.[12] Because the State concedes in its brief that "[t]he prior unrelated felony convictions used to convict [Hape] of the habitual offender enhancement were insufficient to satisfy the requirements of the habitual offender statute," Appellee's Br. p. 3 n. 7, we vacate Hape's thirty-year habitual offender enhancement. We therefore review his sentencing claims against the remaining aggregate fifty-year sentence.

### A. Abuse of Discretion

 Hape contends that the trial court abused its discretion in improperly finding his criminal history and the danger that he posed to the community during the commission of these offenses as aggravating circumstances. He further contends that the trial court abused its discretion in failing to recognize his substance abuse and remorse and acceptance of responsibility as mitigating circumstances. Sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind.2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind.2007). An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.* We can review the presence or absence of reasons justifying a sentence for an abuse of discretion, but we cannot review the relative weight given to these reasons. *Id.* at 491. One way in which a court may abuse its discretion is by entering a sentencing statement that omits mitigating circumstances that are clearly supported by the record and advanced for consideration. *Id.* at 490–91. However, a trial court is not obligated to accept a defendant's claim as to what constitutes a mitigating circumstance. *Rascoe v. State*, 736 N.E.2d 246, 249 (Ind.2000).

At the sentencing hearing, the trial court identified the following aggravating circumstances: (1) Hape's criminal history, including seven felonies and nine misdemeanors; (2) Hape was on bond for three other pending felony cases; (3) Hape had four pending felony cases and a pending misdemeanor case; (4) Hape's "actions, at the time of his arrest, posed a substantial risk to the community. One person had control to begin and end the chase, and that person was [Hape]"; and (5) Hape's "prior probations, community transition efforts and lenient treatment were not successful." Appellant's App. p. 568–69. The

---

12. Although Hape frames his sentencing argument purely as an argument that his sentence is inappropriate, he intersperses allegations that the trial court abused its discretion in several respects. We remind counsel that whether a trial court has abused its discretion by improperly recognizing aggravators and mitigators when sentencing a defendant and whether a defendant's sentence is inappropriate under Indiana Appellate Rule 7(B) are two distinct analyses. *King v. State*, 894 N.E.2d 265, 267 (Ind.Ct.App.2008).

trial court found no mitigating circumstances. *Id.* at 569. On appeal, Hape argues that the trial court abused its discretion in its identification of pending charges and the threat that his fleeing posed to the community as aggravators. He also argues that the trial court abused its discretion in failing to recognize his substance abuse and remorse as significant mitigators.

### 1. Pending Charges

Hape contends that the trial court abused its discretion in identifying his pending charges as an aggravator. He first argues that "given that a defendant is presumed innocent until proven guilty, the court's specific reliance on pending cases for which he has not been convicted was improper." Appellant's Br. p. 37. Our Supreme Court has recognized that, "[a] record of arrest, without more, does not establish the historical fact that a defendant committed a criminal offense and may not be properly considered as evidence of criminal history." *Cotto v. State*, 829 N.E.2d 520, 526 (Ind.2005). However, a record of brushes with the law, "particularly a lengthy one, may reveal that a defendant has not been deterred even after having been subject to the police authority of the State. Such information may be relevant to the trial court's assessment of the defendant's character in terms of the risk that he will commit another crime." *Id.* (citation omitted). Here,

Hape faced multiple pending charges at the time of his sentencing, and the trial court did not abuse its discretion in considering this fact.

Hape also argues, in one sentence, that the trial court erroneously found that he faced a pending misdemeanor charge at the time of sentencing in this case. For this proposition, he cites to two portions of the record, from neither of which can we discern that the trial court was mistaken in this regard.[13] The State points out in its brief that Hape's Presentence Investigation Report reveals that, at the time of sentencing, there were actually *two* misdemeanor charges pending against Hape. Appellant's App. p. 454 (reflecting two pending Class A misdemeanor charges under cause number 19D01–0703–FC–0310). We cannot say that the trial court erred in this regard.

### 2. Nature and Circumstances of the Offense

Hape next contends that the trial court abused its discretion in finding as an aggravating circumstance the threat that he posed to the community during the police chase. He argues that this constitutes an improper aggravating circumstance because it refers to uncharged crimes and "simply restat[es] the facts underlying the resisting conviction to support an enhancement in sentencing[.]" Appellant's Br. p. 37.

---

**13.** Hape refers us to the entire criminal history portion of his Presentence Investigation Report, which he has included on white paper in his appendix. Appellant's App. p. 451–62. We remind counsel that Indiana Appellate Rule 9(J) requires that "[d]ocuments and information excluded from public access pursuant to Administrative Rule 9(G)(1) shall be filed in accordance with Trial Rule 5(G)." Administrative Rule 9(G)(1)(b)(viii) provides that "all pre-sentence reports pursuant to Ind. Code § 35–38–1–13" are "excluded from public access" and "confidential." The inclusion of the PSI printed on white paper in the appendix is inconsistent with Trial Rule 5(G), which states, in pertinent part: "Every document filed in a case shall separately identify documents that are excluded from public access pursuant to Admin. R. 9(G)(1) as follows: (1) Whole documents that are excluded from public access pursuant to Administrative Rule 9(G)(1) shall be tendered on light green paper or have a light green coversheet attached to the document, marked 'Not for Public Access' or 'Confidential.' "

The nature and circumstances of an offense may properly be recognized as an aggravating circumstance. *See Spears v. State,* 735 N.E.2d 1161, 1167 (Ind.2000), *reh'g denied.* Hape is correct, though, that a trial court may not use a factor constituting a material element of an offense as an aggravating circumstance. *Id.* However, the particularized circumstances of the factual elements may be a valid aggravating circumstance. *McElroy v. State,* 865 N.E.2d 584, 589–90 (Ind. 2007). Here, the trial court did not find the act of fleeing from law enforcement aggravating; rather, the court found that the danger created by the chase was aggravating: Hape's "actions, at the time of his arrest, posed a substantial risk to the community." Appellant's App. p. 569. This finding is supported by the record and is a proper comment upon the nature and circumstances of Hape's offense. When police officers tried to arrest Hape, he led them on a high-speed chase. Tr. p. 182. During the chase, Hape drove in excess of one hundred miles per hour and numerous times drove into the oncoming traffic lane. *Id.* at 182, 184. It was only after an approximately forty-minute pursuit, when Hape drove into a flood water area, that officers were able to apprehend him. *Id.* at 188, 191. The trial court did not abuse its discretion in recognizing this aggravating circumstance.

### 3. Substance Abuse

Hape contends that the trial court abused its discretion in failing to recognize his substance abuse problem as a significant mitigating circumstance. While we have recognized that a history of substance abuse may be a mitigating circumstance, *Field v. State,* 843 N.E.2d 1008, 1012 (Ind. Ct.App.2006), *trans. denied,* we have held that when a defendant is aware of a substance abuse problem but has not taken appropriate steps to treat it, the trial court

does not abuse its discretion by rejecting the addiction as a mitigating circumstance. *Bryant v. State,* 802 N.E.2d 486, 501 (Ind. Ct.App.2004), *trans. denied.*

Hape argues that he "did not have a history of refusing treatment offered to him by courts or other entities or persons[,]" Appellant's Br. p. 37, and that "[a]pparently, the system failed to intervene with appropriate treatment at an earlier stage in [his] life." *Id.* at 36. This misses the point. Hape has been involved with the criminal justice system since 1992, and a number of his convictions and charges stem from substance abuse or possession. Appellant's App. p. 453–60. As characterized by the defense, Hape's criminal history reflects that he "is heavily plagued" by his substance abuse. Appellant's Br. p. 36. At his sentencing hearing, the defense presented evidence that Hape's substance abuse began noticeably affecting his personal interactions "a few years ago." Tr. p. 517. It is apparent from the record that Hape knew for some time that he had a substance abuse problem and that he did little or nothing to treat it until after his arrest for the instant offenses. *See id.* at 509 (testimony that Hape began treatment with minister Brian Shover approximately six months before his sentencing hearing). The trial court did not abuse its discretion in failing to recognize Hape's substance abuse as a significant mitigating circumstance.

### 4. Remorse

Hape next contends that the trial court abused its discretion in failing to recognize his remorse as a significant mitigating circumstance. Our Supreme Court has recognized remorse as a valid mitigating circumstance. *Cotto,* 829 N.E.2d at 526. On appeal, however, our review of a trial court's determination of a

defendant's remorse is similar to our review of credibility judgments: without evidence of some impermissible consideration by the trial court, we accept its determination. *Pickens v. State*, 767 N.E.2d 530, 535 (Ind.2002).

Here, Hape initially apologized for his offenses during his sentencing hearing: "I've just made a lot of mistakes here and I, I'm sorry for what I've done and would like to apologize to the Court and to the community for my actions that I've done." Tr. p. 491. However, his expression of remorse is belied by his subsequent attempts to blame others for his situation. *Id.* ("Urn, I'd like to get, have a chance to straighten my life out and get some kind of drug rehab and, and, and, you know, get the treatment I need cause I've never had an opportunity to get that."); *id.* at 492 (claiming that during the police chase, the officer shot him "for no reason" and arguing, "I didn't do nothing to hurt anybody else and I didn't hurt none of them"); *id.* at 494 ("I know that the court system is based on a chance to let people be, rehabilitate themselves and I've never been given that opportunity at any time in anything I've been through."). Given this testimony, and absent any evidence that the trial court engaged in any impermissible considerations, we conclude that the trial court did not abuse its discretion in failing to recognize Hape's alleged remorse as a significant mitigating circumstance.

### B. Inappropriateness

▇▇▇▇ Hape argues that the eighty-year sentence imposed by the trial court is inappropriate. Having reduced Hape's sentence to fifty years because we reverse his habitual offender finding, as a matter of judicial efficiency, we now address the question of whether fifty years is an inappropriate sentence. Although a trial court may have acted within its lawful discretion in imposing a sentence, Article VII, Sections 4 and 6 of the Indiana Constitution authorize independent appellate review and revision of sentences through Indiana Appellate Rule 7(B), which provides that a court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." *Reid v. State*, 876 N.E.2d 1114, 1116 (Ind.2007) (citing *Anglemyer*, 868 N.E.2d at 491). "The principal role of appellate review [of the inappropriateness of sentences] should be to attempt to leaven the outliers[.]" *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind.2008). The burden is on the defendant to persuade us that his sentence is inappropriate. *Reid*, 876 N.E.2d at 1116 (citing *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind.2006)).

Regarding the nature of the offenses, Hape fled police officers when they tried to arrest him on outstanding warrants. He led numerous officers on a high-speed car chase for almost forty minutes, during which time he drove up to one hundred miles per hour and crossed into the oncoming traffic lane. Hape was arrested only when he was forced to stop his vehicle after driving into a flooded area. During the search incident to Hape's arrest, officers discovered multiple plastic bags containing methamphetamine and $636 in cash in Hape's possession. In total, Hape possessed more than eight grams of methamphetamine. Not only did Hape possess methamphetamine with the intent to deliver it, he endangered the lives of numerous police officers and posed a risk to members of the community while he fled law enforcement. Nothing about the nature of the offenses renders Hape's sentence inappropriate.

Regarding the character of the offender, Hape's criminal history is abysmal. His many criminal convictions, including prior

seven felonies and nine misdemeanors, Appellant's App. p. 568, reflect a disdain for the law. Hape's sentence is likewise not inappropriate in light of his character.

### Conclusion

We affirm in part and reverse in part. We remand to the trial court to issue a new sentencing order not inconsistent with this opinion.

KIRSCH, J., and CRONE, J., concur.