Duane BONE, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 21A01–0105–CR–168.

Court of Appeals of Indiana.

July 18, 2002.

Terry O'Maley, Boston Bever Klinge Cross & Chidester, Richmond, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Duane Bone appeals his conviction on one count of possession of child pornography, a class A misdemeanor.

We affirm.

### ISSUES

1. Whether the trial court erred when it denied Bone's motion to suppress.

2. Whether the trial court erred in admitting pictorial images from Bone's computer because the State failed to establish authentication of the images.

3. Whether sufficient evidence supports Bone's conviction.

### FACTS

Duane Bone took his computer to Anything Computers in Connersville. Bone reported that the computer might have been struck by lightning and left the computer there to have its power supply and electronics be checked.

Ralph Collins was a technician at Anything Computers. On April 10, 2000, Collins determined that Bone's computer required a new power supply. The manager called Bone and reported this to him, and Bone gave "permission to do service." (Tr. 7). Collins then "placed a new" power supply in the computer and proceeded to open various programs and documents to confirm that the repair was effective. *Id.* Collins "opened up the Start" and when he "clicked on a few" of the "documents in

there" in order "to start the Test Program," he saw a photograph of a nude girl. *Id.* Collins thought the girl "looked like she was between the ages of 12 and 14," with neither breasts nor pubic hair and "one leg propped up" to display her pubic area. (Tr. 70). Collins saw several other similar items, and he called the police to report what he believed was child pornography.

Officer Locke of the Connersville Police Department responded, and Collins showed him the girl's image that he had found on Bone's computer. Collins noted to Locke several icons along the side of the image that led Collins to believe other similar images were present as well. Collins then showed Locke two other images and a short video he had found on Bone's computer.

Officer Locke returned to his office and reported to his supervisor. The Indiana State Police were called, and later that day Locke went with Trooper Hunt[1] to Anything Computers and asked to be shown the items Collins had found. Hunt saw a video of a young boy who "couldn't have been more than 4 or 5" years-old and was "urinating on a man," and the image of the young girl that Collins had first seen. (Tr. 59). Hunt then obtained a search warrant and seized the computer.

Detective Loyd,[2] of the Indiana State Police cyber crime unit, examined the contents of Bone's computer. Loyd recovered and made prints of a large number of images from Bone's computer equipment. These printed images were submitted as State exhibits at trial and are contained in the Appendix. *See* App. pp. 214–295.

Bone was charged with one count of possession of child pornography, a class A misdemeanor. His trial to the bench commenced on February 26, 2001. Collins testified about seeing the young girl's image and calling the police. Officer Locke testified about going to Anything Computers the first time and subsequently returning with Trooper Hunt, then obtaining a warrant and seizing the computer, and later viewing images "of child pornography" retrieved by the State Police from the computer. (Tr. 35). During the course of Locke's testimony about serving a second warrant on Bone at his home for other computers therein, Bone asserted "constitutional violations" in that he had never consented to any search of his computer and that all the State's evidence "derived from" an initial "illegal search" by Collins. (Tr. 40, 41). The court took Bone's argument under advisement and continued the trial. At the close of all evidence, the trial court denied Bone's motion to suppress.

Thereafter, Locke continued his testimony. He testified that when the search warrant was served on Bone and his wife at their home, Mrs. Bone "blurted out, he promised me he wouldn't do that again." (Tr. 91). Locke further testified that he had heard Bone admit to Customs Agent Tom Rothrock[3] that he had downloaded images of children "for his own use." (Tr. 53). Rothrock testified that he had read Bone his *Miranda* rights, and that Bone had indicated that he understood those

---

1. Locke testified that he called Trooper Hunt because of his experience in this field. Hunt was "squad leader for the Crimes Against Children Unit." (Tr. 82).

2. Loyd was "an investigator, detective assigned to the cyber crime unit of the Indiana State Police." (Tr. 99).

3. Rothrock had been contacted by Trooper Hunt about the Bone matter; Rothrock investigated contraband that crossed the U.S. border and worked with state and local police in that regard.

rights; that Bone had signed the rights waiver form; and that Bone "proceeded to tell me that he had used his computer to view images of child pornography in the past" and "had stored some images" thereof on various computer equipment that he owned. (Tr. 78).

When the State attempted to introduce a CD–ROM that contained the files which had produced the pictorial images that the printed exhibits showed from Bone's computer, Bone objected that the images "ha[d] not been authenticated" as to what the "depiction[s] portrayed." (Tr. 117). The State responded that the exhibits showed "the evidence contained in Mr. Bone's computer." (Tr. 118). Bone responded that the State had "to show that this thing has never been altered in any significant way." (Tr. 119). Detective Loyd, who had undergone training in "the field of examination of computers," testified as to how he created the exhibits and that they portrayed the "contents, in its entirety, exactly as I found it" of files on Bone's computer equipment. (Tr. 101, 120). The trial court admitted the exhibits. Exhibit 3 was identified by Collins as the image of the young girl he first found.

The trial court found Bone guilty of possession of child pornography, a class A misdemeanor. It sentenced him to thirty days in jail, suspended, and placed him on informal probation for one year.

### DECISION

1. *Motion to Suppress*

Bone first argues that the trial court erred in denying his motion to suppress because his rights under the Fourth Amendment to the U.S. Constitution and Article 1, § 11 of the Indiana Constitution to be free from unreasonable search and seizure have been violated. Specifically, he contends that all pictorial depictions from his computer should have been sup-pressed because even though search warrants were later obtained, they flowed from an initial illegal search by Collins. We disagree.

When we review the denial of a motion to suppress,

we review the record for substantial evidence of probative value to support the trial court's ruling. We do not reweigh the evidence. We resolve conflicting evidence in favor of the trial court and consider any substantial uncontroverted evidence.

*Willsey v. State,* 698 N.E.2d 784, 789 (Ind. 1998).

"A search or seizure by a private party does not implicate the Fourth Amendment." *U.S. v. Shahid,* 117 F.3d 322, 325 (7th Cir.1997), *cert. denied* 522 U.S. 902, 118 S.Ct. 254, 139 L.Ed.2d 182. "However, the Fourth Amendment does apply to a search or seizure by a party (even if otherwise a private party) who is acting as an 'instrument or agent' of the government." *Id.* (citations omitted). Two "critical factors" in the "instrument or agent" analysis are (1) whether the government knew of and acquiesced in the intrusive conduct, and (2) whether the private party's purpose in conducting the search was to assist law enforcement agents or to further its own ends. *Id.* Here, the police had no role in Collins' initial sighting of certain images on Bone's computer, and his purpose in looking where he did was to test the computer repairs that he had effected. Hence, Collins was not an instrument or agent of the government, and his opening and viewing of the files in Bone's computer do not constitute a violation of Bone's Fourth Amendment rights.

Nevertheless, Bone appears to argue that the violation occurred when police did not immediately seek a search warrant

after Collins called to report seeing what he believed was child pornography on Bone's computer. In support, he directs us to *Walter v. United States*, 447 U.S. 649, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980). In *Walter*, a third party mistakenly received and then opened a shipment of boxes that were addressed to someone else. The third party did attempt "to view portions of the film by holding it up to the light," but that effort was unavailing, and the third party did not see what was on the films. *Id.* at 651, 100 S.Ct. 2395. However, because the labeling of the boxes clearly indicated that they contained obscenity, the third party called the FBI. Thereafter, agents of the FBI picked up the boxes of films and used a projector to view the 8-millimeter films. The court held that although "there was nothing wrongful about the Government's acquisition of the packages," the FBI should have obtained a search warrant before conducting "the additional search" of "screening" the films.[4] *Id.* at 657, 659, 100 S.Ct. 2395. Because the private party had not viewed the films, *Walter* is not apposite to the case before us. Further, the Court expressly declined "to decide whether the Government would have been required to obtain a warrant had the private party been the first to view them." *Id.* at 658 n. 9, 100 S.Ct. 2395.

Bone also directs us to *Machlan v. State*, 248 Ind. 218, 225 N.E.2d 762 (1967). In *Machlan*, police called a salvage yard owner to request removal of a vehicle from the scene of a collision. The police then directed the salvage yard worker who responded to search the vehicle for guns. This was held to constitute "an unlawful search and seizure without a warrant." *Id.* at 766. Again, the facts are distinguishable, in that there had been no prior

sighting by the salvage yard worker of what he believed to be contraband before the police specifically instructed him to search the vehicle.

 Finally, Bone's right to be free from unreasonable searches and seizures under the Indiana Constitution is a right judged upon the standard of "the reasonableness of the official behavior." *Moran v. State*, 644 N.E.2d 536, 539 (Ind.1994). However, this protection is also from "official and not private acts." *Id.* Bone cites *Shepherd v. State*, 690 N.E.2d 318 (Ind.Ct. App.1997), *trans. denied*, as requiring a search warrant pursuant to the Indiana Constitution before anything on his computer was viewed by the police. In *Shepherd*, after a fatal accident, a vehicle was towed to and stored in a "wreck yard." *Id.* at 322. Subsequently, police acted without a warrant to collect physical evidence—samples of blood, tissue, and hair—from the wrecked vehicle in order to determine who had been driving the vehicle. We held that a warrantless search was not justified, and evidence obtained from the car should not have been admitted at trial. Again, we find this case distinguishable. Here, a private party saw what he believed to be child pornography, which he showed to police, and we do not read *Shepherd* to hold that a warrant was first required to be obtained in order for the police to view that which Collins had seen.

 Unlike in *Machlan* and *Shepherd*, law enforcement did not possess sufficient information—based upon the call from Collins—to have immediately proceeded to seek a warrant. To establish probable cause for a search warrant, "a law enforcement officer must show that crime-connected items exist and that they can be discovered in a specific place."

---

**4.** The court observed that the labeling on the boxes "established probable cause to believe

the films were obscene." *Id.* at 657, 100 S.Ct. 2395.

*Lloyd v. State,* 677 N.E.2d·71, 73 (Ind.Ct. App.1997), *trans. denied,* (citing IND. Code § 35–33–5–2(a)(1)(A)). If Collins' statement had been used to seek a search warrant, evidence would have had to establish Collins' credibility as to the existence of child pornography. *See Id.* at 74. Moreover, a limited investigation may be undertaken by law enforcement "if, based upon specific and articulable facts, the officer has a reasonable suspicion that criminal activity 'may be afoot.'" *Overstreet v. State,* 724 N.E.2d 661, 663 (Ind.Ct.App. 2000), *trans. denied,* (quoting *Terry v. Ohio,* 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). The call from Collins provided sufficient facts to Officer Locke such that Locke, and subsequently Locke and Trooper Hunt, could view that which Collins had seen and thereafter determine whether probable cause existed for seeking a search warrant for Bone's computer.

The actions of law enforcement here did not violate Bone's Fourth Amendment rights. Therefore, the trial court did not err in denying Bone's motion to suppress.

## 2. *Admission of Pictorial Depictions*

Next, Bone contends that the trial court erred when it admitted the pictorial depictions without authentication of those depictions. According to Bone, the authentication required by Indiana Evidence Rule 901(a) is a showing that the exhibits depicted actual children or what appeared to be actual children, as alleged in the information. The State responds that the authentication requirement is satisfied by a showing that the images contained in the exhibits were recovered from Bone's computer. We agree with the State.

Evidence Rule 901(a) states, "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." The

showing of authenticity is "a finding that it is what its sponsor purports it to be." ROBERT LOWELL MILLER, JR., INDIANA EVIDENCE, 13 INDIANA PRACTICE § 901.101 (1995). Here, the State offered the exhibit to show what it had found on Bone's computer.

Federal Rule of Evidence 901(a) is identical to Indiana's Rule 901(a). In *U.S. v. Whitaker,* 127 F.3d 595 (7th Cir.1997), *cert. denied* 522 U.S. 1137, 118 S.Ct. 1098, 140 L.Ed.2d 153, the government offered records retrieved from a computer. An FBI agent testified about how he was present and observed the records being retrieved from a certain computer using a special computer program and about his personal familiarity with that process. This testimony "was sufficient to establish the authenticity of the computer records" so retrieved and sustained their admission into evidence. *Id.* at 601.

■ We note that Bone did not challenge either Detective Loyd's technical capabilities or the procedures that he employed in retrieving and producing reproductions of those pictorial images found on Bone's computer. Loyd testified that he "remove[d] the hard drive" from Bone's computers and "made an image of it"; he "right protected" the various floppy diskettes; he then viewed both. (Tr. 106). He testified about the software program he used to recover deleted files. The detective further testified as to how he had generated the exhibits from images found on Bone's computer equipment, using a computer program to print them. He testified that he printed copies of images in Bone's computer files "exactly" as he found them, and further averred that the images "fairly and accurately" showed the images that he had seen "on the computer that [he was] using to examine Mr. Bone's computer." (Tr. 120). The testimony before the trial court was sufficient to establish the authenticity of

the exhibits as depicting the images contained in Bone's computer equipment. *See Whitaker,* 127 F.3d at 601.

### 3. *Sufficiency of the Evidence*

■ Finally, Bone asserts that the evidence presented was insufficient to convict him of possession of child pornography "due to the failure to prove any pictorial presentation depicted or described sexual conduct by a child under sixteen years of age or who appeared to be under sixteen years of age." Bone's Br. at 14–15. We disagree.

■ "In reviewing a claim of insufficient evidence, we will affirm the conviction unless, considering only the evidence and reasonable inferences favorable to the judgment, and neither reweighing the evidence nor judging the credibility of the witnesses, we conclude that no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Robertson v. State,* 765 N.E.2d 138, 139 (Ind.2002).

Indiana Code § 35–42–4–4(c) provides that a person who knowingly or intentionally possesses any pictorial representation that depicts or describes sexual conduct by a child who is less than sixteen years of age, or appears to be less than sixteen years of age, commits possession of child pornography a class A misdemeanor. "Sexual conduct" is defined to include the "exhibition of the uncovered genitals intended to satisfy or arouse the sexual desires of any person." Ind.Code § 35–42–4–4(a).

In *Pope v. State,* 740 N.E.2d 1247, 1252 (Ind.Ct.App.2000), we found sufficient evidence to sustain a conviction for the possession of child pornography where the police found photographs of children having sex or in sexually explicit poses on the defendant's computer, and the defendant "was aware that the photographs had been saved to his computer's memory." Here, there was testimony that Bone was aware of child pornography on his computer, and that he had placed the images on his computer for his own use.

Bone argues that there is no evidence "that any pictorial depiction showed an actual human being." Bone's Br. at 15. But Trooper Hunt testified that he knew the girl portrayed in Exhibit 14 and that the picture was taken when she was eleven years-old. He also testified that he recognized another image of "a Bloomington girl, last name was _____," whom he knew to be underage. (Tr. 87).

Moreover, inasmuch as the purpose of the statute is to protect children from exploitation, we will not require the State to bring in an actual victim and display him or her in a court proceeding to establish that he or she is the one depicted in a pictorial image. Here, the trial court had before it more than eighty images of children, mostly girls, each retrieved from Bone's computer. Nearly all the images show a young girl posed in a sexually explicit manner, or posing as to exhibit her uncovered genitals. Herein, an assessment as to the girl's age is not only a matter of common sense but also the trier of fact may take into account her overall appearance, including the developmental stage of the girl based upon her breasts, body hair, and other anatomical features. While it is possible that not all the girls were children under the age of sixteen, we cannot say that no reasonable fact-finder could find beyond a reasonable doubt that at least one was of a child under the age of sixteen. Therefore, we find sufficient evidence to support Bone's conviction.

We affirm.

SULLIVAN and BAKER, JJ., concur.