# FOR PUBLICATION



ATTORNEYS FOR APPELLANT:

**STEPHEN T. OWENS**
Public Defender of Indiana

**DEIDRE R. ELTZROTH**
Assistant Chief Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

EVERETT SWEET,                        )
                                        )
     Appellant-Defendant,         )
                                        )
          vs.                     )      No. 35A02-1305-PC-451
                                        )
STATE OF INDIANA,               )
                                        )
     Appellee-Plaintiff.            )

APPEAL FROM THE HUNTINGTON SUPERIOR COURT
The Honorable Jeffrey R. Heffelfinger, Judge
Cause No. 35D01-1004-PC-4

**February 5, 2014**

**OPINION ON REHEARING – FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

The State petitions for rehearing following this court's December 6, 2013, opinion, in which we affirmed the post-conviction court's denial of Sweet's petition for post-conviction relief. While the State prevailed in our original appeal, in its petition for rehearing the State asserts that we mistakenly relied on our Supreme Court's opinion in Norris v. State, 896 N.E.2d 1149 (Ind. 2008), rather than our Supreme Court's opinion in Helton v. State, 907 N.E.2d 1020 (Ind. 2009). The State is correct. Norris involved a petition for post-conviction relief filed pursuant to Indiana Post-Conviction Rule 1(a)(4), whereas Helton, like Sweet's appeal, involved a petition filed pursuant to Rule 1(a)(1). Accordingly, we grant the State's petition, vacate our prior opinion, and substitute our prior opinion with this opinion on rehearing. We again affirm the post-conviction court's denial of Sweet's petition for post-conviction relief.

## FACTS AND PROCEDURAL HISTORY

On November 27, 2008, Sweet stayed the night at the home of Jason Weinley. The next morning, Sweet "call[ed] around trying to find . . . fertilizer" and told Weinley he needed fertilizer "[f]or making meth." Motion to Suppress Transcript at 7-8. Weinley told Sweet to leave, and Weinley gave Sweet a ride to a third party's house. En route, Sweet told Weinley that "he forgot his [backpack] on [Weinley's] porch." Id. at 8.

When he returned to his home, Weinley located Sweet's backpack. Weinley "was worried about what was in it because [he had] kids running around" and he "wanted to make sure that it wasn't stuffed with meth." Id. at 9. Upon opening Sweet's backpack, Weinley discovered a mobile meth lab. Weinley called the Huntington Police Department.

2

Detective Matt Hughes responded to Weinley's call and learned that the State had several active warrants for Sweet's arrest. Detective Hughes set up surveillance a few blocks from Weinley's residence and observed Sweet return to pick up his backpack and then drive away. Detective Hughes initiated a traffic stop and arrested Sweet pursuant to the active arrest warrants. Detective Hughes observed Sweet's backpack behind the driver's seat, and he seized and searched the backpack without a search warrant. Detective Hughes confirmed Weinley's initial report that the backpack was a mobile meth lab.

The State charged Sweet with dealing in methamphetamine, as a Class B felony; attempted dealing in methamphetamine, as a Class B felony; and possession of drug precursors, as a Class D felony. The State subsequently amended its information to additionally allege that Sweet was an habitual offender. Sweet filed a motion to suppress the evidence, in which he argued that Weinley was an agent of the Huntington Police Department and, therefore, his search of Sweet's backpack without a search warrant violated Sweet's rights under the Fourth Amendment to the United States Constitution and Article I, Section 11 of the Indiana Constitution. At an ensuing evidentiary hearing, Sweet's counsel questioned one of the detectives involved in the investigation about Weinley's relationship with the Huntington Police Department, but he did not question Weinley. The trial court denied Sweet's motion to suppress.

Following the trial court's denial of his motion to suppress, Sweet pleaded guilty to dealing in methamphetamine, as a Class B felony. In exchange for his plea, the State dismissed the remaining charges, including the habitual offender allegation. On August 25, 2009, the trial court held a guilty plea hearing, fully advised Sweet of his rights, and

3

established the factual basis for Sweet's plea of guilty. The court then accepted Sweet's plea agreement. Pursuant to the terms of Sweet's plea agreement, the trial court sentenced him to eighteen years. Sweet did not file a direct appeal.

On April 13, 2010, Sweet filed his petition for post-conviction relief, which he later amended. In his amended petition, Sweet alleged that his trial counsel had rendered ineffective assistance when he failed to question Weinley at the motion to suppress hearing and that, if his counsel had properly examined Weinley, his counsel would have learned that Weinley was a paid informant of the Huntington Police Department. Sweet then alleged that this additional evidence would have compelled the trial court to grant his motion to suppress the evidence, and that, with the State's evidence suppressed, he would not have pleaded guilty.

The post-conviction court held an evidentiary hearing on Sweet's petition on March 19, 2013, after which the court entered findings of fact and conclusions of law denying the petition. In particular, the post-conviction court found, in relevant part, as follows:

> In order to prevail on this issue, Petitioner would have to show that he would have prevailed on his Motion to Suppress Evidence if his counsel, Jeremy Nix, had raised the issue of Jason Weinley being a paid informant, and thus a police agent, when he conducted a warrantless search of the back pack. Even though Mr. Nix did not question Mr. Weinley about being paid by the police for the information he provided to the police about the Petitioner, it would not have made a difference during the suppression hearing because the evidence shows that Jason Weinley was not a police agent on November 28, 2008, when he conducted the search of the back pack.
>
> * * *
>
> What was not disclosed at the suppression hearing is that Jason Weinley received $100 from the Huntington Police Department as a reward for the information he provided approximately one to two weeks after

November 28, 2008, and then another $200 after the Petitioner was sentenced. Prior to November 28, 2008, Mr. Weinley had been paid for working as a confidential informant for the Huntington Police Department in late 2007 by assisting the police with controlled buys of narcotics. He did not receive any money from the Huntington Police Department between late 2007 and December 2008, despite having provided the police with information during that time period. The police did not discuss the possibility of payment with Mr. Weinley at any time on November 28, 2008.

In order for a private citizen to be considered an agent of the police for Fourth Amendment purposes, the government had to have known and acquiesced to the search[,] and the private citizen's purpose in conducting the search is to assist law enforcement agents or to further his own ends. Bone v. State, 771 N.E.2d 710, 714 (Ind. Ct. App. 2002). Also, simply being paid for information in the past does not make him a police agent. Zupp v. State, 283 N.E.2d 540 (Ind. 1972). Jason Weinley would not be considered an agent of the police because the first prong of the Bone test is not met. The police were unaware that Jason Weinley searched the Petitioner's back pack prior to him doing so, or that he even had access to the back pack. Additionally, Jason Weinley testified at the suppression hearing that he searched the back pack because he was concerned about what may have been in the back pack since his children would have access to it.

The payments made to Jason Weinley by the Huntington Police Department after the search do not make him a paid informant and thus does not change the outcome of the hearing on the Motion to Suppress Evidence. . . .

Petitioner has not shown an objectively reasonable probability that competent representation would have caused the [P]etitioner not to enter a plea. Petitioner has failed to demonstrate by a preponderance of the evidence that he was denied the effective assistance of counsel during his plea of guilty or the suppression hearing.

Appellant's App. at 7-9. This appeal ensued.

## DISCUSSION AND DECISION

Sweet appeals the post-conviction court's denial of his petition for post-conviction relief. Our standard of review is clear:

[The petitioner] bore the burden of establishing the grounds for post-conviction relief by a preponderance of the evidence. See Ind. Post-Conviction Rule 1(5); Timberlake v. State, 753 N.E.2d 591, 597 (Ind. 2001). Post-conviction procedures do not afford a petitioner with a super-appeal, and not all issues are available. Timberlake, 753 N.E.2d at 597. Rather, subsequent collateral challenges to convictions must be based on grounds enumerated in the post-conviction rules. Id. If an issue was known and available, but not raised on direct appeal, it is waived. Id. If it was raised on appeal, but decided adversely, it is res judicata. Id.

> In reviewing the judgment of a post-conviction court, appellate courts consider only the evidence and reasonable inferences supporting the post-conviction court's judgment. Hall v. State, 849 N.E.2d 466, 468 (Ind. 2006). The post-conviction court is the sole judge of the evidence and the credibility of the witnesses. Id. at 468-69. Because he is now appealing from a negative judgment, to the extent his appeal turns on factual issues [the petitioner] must convince this court that the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court. See Timberlake, 753 N.E.2d at 597. We will disturb the decision only if the evidence is without conflict and leads only to a conclusion contrary to the result of the post-conviction court. Id.

Lindsey v. State, 888 N.E.2d 319, 322 (Ind. Ct. App. 2008), trans. denied.

On appeal, Sweet argues that his trial counsel rendered ineffective assistance when he failed to investigate Weinley's relationship with the Huntington Police Department prior to or during the motion to suppress hearing; that, if his counsel had properly investigated this relationship, the State's evidence would have been suppressed for having been seized in violation of the Fourth Amendment to the United States Constitution;[1] and that, because

---

[1] Although Sweet asserts that Weinley's search violated his rights under both the federal and state constitutions, Sweet does not separately explain how the facts of this case demonstrate a violation of the Indiana Constitution. As such, "[a]ny claim of error under the Indiana Constitution is waived." Dye v. State, 717 N.E.2d 5, 13 n.7 (Ind. 1999). In any event, for the same reasons Sweet cannot demonstrate error under the federal constitution he cannot demonstrate error under the Indiana Constitution. See, e.g., Sowers v. State, 724 N.E.2d 588, 591-92 (Ind. 2000).

of his counsel's purported failure, Sweet did not enter into his guilty plea knowingly, intelligently, and voluntarily.  As our Supreme Court has explained:

> To establish a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel performed deficiently and the deficiency resulted in prejudice.  Lee v. State, 892 N.E.2d 1231, 1233 (Ind. 2008) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). . . .
>
> [The petitioner's] claim is that his counsel's failure to file a motion to suppress was ineffective assistance of counsel.  In order to prove prejudice stemming from ineffective assistance, a defendant must show a reasonable probability that, but for counsel's unprofessional errors, the result of his criminal proceeding would have been different.  Strickland, 466 U.S. at 694, 104 S. Ct. [at] 2052.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  Id.  . . .  A petitioner alleging ineffective assistance of counsel in overlooking a defense leading to a guilty plea must show a reasonable probability that, had the defense been raised, the petitioner would not have pleaded guilty and would have succeeded at trial.

Helton, 907 N.E.2d at 1023.

> As we have explained:
>
> "A search or seizure by a private party does not implicate the Fourth Amendment."  U.S. v. Shahid, 117 F.3d 322, 325 (7th Cir. 1997), cert. denied, 522 U.S. 902, 118 S. Ct. 254, 139 L. Ed. 2d 182.  "However, the Fourth Amendment does apply to a search or seizure by a party (even if otherwise a private party) who is acting as an 'instrument or agent' of the government."  Id. (citations omitted).  Two "critical factors" in the "instrument or agent" analysis are (1) whether the government knew of and acquiesced in the intrusive conduct, and (2) whether the private party's purpose in conducting the search was to assist law enforcement agents or to further its own ends.  Id.

Bone v. State, 771 N.E.2d 710, 714 (Ind. Ct. App. 2002).  And our Supreme Court has recognized that having acted as an informant in the past does not automatically make one a State agent.  See Zupp v. State, 258 Ind. 625, 628, 283 N.E.2d 540, 542 (1972).

7

The premise underlying each of Sweet's arguments on appeal is that Weinley was a paid informant for, and thereby an agent of, the Huntington Police Department at the time Weinley searched Sweet's backpack, without a warrant, at Weinley's residence. In particular, Sweet asserts that Weinley had an on-going contractual relationship with the Huntington Police Department and that Weinley was paid for the information he turned over. We cannot agree with Sweet's characterization of the evidence before the post-conviction court.

The evidence does not demonstrate that the State knew of and acquiesced in Weinley's search of Sweet's backpack and that Weinley conducted that search in order to assist law enforcement or to further his own ends. There is no evidence that Weinley was in a contractual relationship with the Huntington Police Department at the time of the November 28, 2008, search. The parties have stipulated that "no document currently exists which memorializes the agreement" between the Huntington Police Department and Weinley. Appellant's App. at 38. Huntington Police Department Detective Chad Hacker testified that, in 2007, Weinley had entered into an agreement wherein he would be paid to participate in two controlled drug buys, and that that agreement had been completed shortly thereafter. Post-Conviction Transcript at 37. Detective Hacker further testified that Weinley did not enter into any subsequent contracts with the department and that the department did not have any permanently paid confidential informants. Id. 37, 41. And Detective Hacker testified that departmental records showed no payments to Weinley between the completion of his 2007 contract and November 28, 2008, even though Weinley had twice submitted information to the department in that time, and that Crime Stoppers,

8

an organization that pays citizens for turning in information about crimes, paid Weinley $200 following Sweet's conviction. Id. at 44-45. Detective Hughes submitted an affidavit in which he also stated that Weinley had not been paid for information following the completion of the 2007 contract and that that contract did not include a provision for Weinley to be paid for turning in information about illegal activity. Appellant's App. at 11-12.

Weinley likewise testified before the post-conviction court that he had, on two occasions between the completion of the 2007 contract and November 28, 2008, given law enforcement information, but he had not been paid either time. Post-Conviction Transcript at 76, 82-83. And Weinley testified that he had not been told he would be paid if he searched Sweet's bag on November 28, 2008. Id. at 79. Indeed, at the evidentiary hearing on Sweet's motion to suppress, Weinley testified that he did not search Sweet's backpack under the direction of an officer but because he "was worried about what was in it because [he had] kids running around" and he "wanted to make sure that it wasn't stuffed with meth." Motion to Suppress Transcript at 9. Only after Weinley opened Sweet's backpack did Weinley contact the Huntington Police Department. Id. at 10-11; Post-Conviction Transcript at 79.

Moreover, the evidence before the post-conviction court shows that Nix, Sweet's trial counsel, investigated Weinley's potential status before the motion to suppress hearing. Nix testified that he had discussed Weinley's potential status as a paid informant with the deputy prosecutor, Andrew Kobe. Nix testified that Kobe had told him about Weinley's 2007 contract but told him that Weinley was not paid a weekly fee and was not on the

9

department's payroll. Post-Conviction Transcript at 104. Based on this information, Nix did not question Weinley about his status at the motion to suppress hearing.

Sweet's arguments on appeal are, in essence, a request for this court to ignore the evidence most favorable to the post-conviction court's judgment and, instead, reweigh the evidence in the manner most favorable to Sweet. We will not do so. See Lindsey, 888 N.E.2d at 322. Considering only the evidence most favorable to the post-conviction court's judgment, it is clear that Sweet has not met his burden to demonstrate that Weinley was an agent of the Huntington Police Department on November 28, 2008. Sweet cannot show that the Huntington Police Department knew of and acquiesced in Weinley's search of Sweet's backpack and that Weinley's purpose in conducting that search was to assist law enforcement or to further his own ends. See Bone, 771 N.E.2d at 714. Indeed, the evidence demonstrates that Weinley was acting as a private citizen when he searched Sweet's backpack. As such, the Fourth Amendment does not apply here. Id. Further, Sweet cannot show that Nix failed to investigate this issue before the motion to suppress hearing or that, had this issue been raised, Sweet would not have pleaded guilty and would have succeeded at trial. See Helton, 907 N.E.2d at 1023. In sum, the evidence as a whole does not lead unerringly and unmistakably to a decision opposite that reached by the post-conviction court. See Lindsey, 888 N.E.2d at 322.

Accordingly, Sweet cannot demonstrate either that his counsel rendered ineffective assistance or that Sweet was prejudiced by his counsel's assistance. See Helton, 907 N.E.2d at 1023. Further, Sweet cannot demonstrate that he entered into the guilty plea

10

unknowingly, unintelligently, or involuntarily. See id. As such, we affirm the post-conviction court's denial of Sweet's petition for post-conviction relief.

Affirmed.

MATHIAS, J., concurs.

BROWN, J., concurs in result.