**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



APPELLANT PRO SE:

**JOEL GRANBERRY**
Indianapolis, Indiana

ATTORNEY FOR APPELLEE
BEVERLY J. MIDDAUGH:

**BRYAN S. REDDING**
Redding Law, LLC
Carmel, Indiana

ATTORNEY FOR APPELLEE
BRIGHT IDEAS IN BROAD RIPPLE INC:

**RICHARD K. SHOULTZ**
**WANDINI B. RIGGINS**
Lewis Wagner, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JOEL GRANBERRY, | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 49A05-1312-CT-585 |
| | ) | |
| BRIGHT IDEAS IN BROAD RIPPLE, INC., | ) | |
| and BEVERLY J. MIDDAUGH, | ) | |
| Appellees-Respondents. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Heather A. Welch, Judge
Cause No. 49D12-1208-CT-31886

**September 25, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

Joel Granberry ("Granberry"), proceeding *pro se*, filed a civil suit against Bright Ideas in Broad Ripple, Inc. ("Bright Ideas") and Beverly J. Middaugh ("Middaugh") (collectively, "the Defendants"), seeking damages on numerous theories of recovery. The trial court granted the Defendants' motion to dismiss his case, granted a motion for default judgment on the Defendants' counterclaims, and subsequently ordered Granberry to pay attorney's fees incurred by the Defendants.

Granberry appeals. We affirm.

**Issues**

Granberry presents several issues on appeal. We consolidate and restate these as:

   I.    Whether the trial court erred when it granted the Defendants' motion to dismiss Granberry's suit; and

   II.   Whether the trial court abused its discretion when it denied his motion to set aside the default judgment on the counterclaims entered against him.

**Facts and Procedural History**

In light of the procedural posture of this appeal, we take as true the facts as alleged in Granberry's second amended complaint.

Granberry and his estranged wife, Heidi, shared a daughter, T.A.G., who was twelve years old in October 2011. On October 4, 2011, Heidi attempted suicide.[1] Learning of this,

---

[1] Upon review of the record, it is unclear to this Court which of T.A.G.'s parents customarily had custody of the child. In light of events in the case, it appears that Heidi ordinarily had custody of T.A.G.

Heather Coffy ("Coffy"), maternal aunt to T.A.G., took custody of the girl on Heidi's behalf and brought the child to Coffy's home in Indianapolis for the night.

Against Granberry's will, Coffy kept custody of T.A.G. during the two subsequent days and denied Granberry access to T.A.G., transporting the girl on October 5, 2011, to the Indianapolis home of Coffy's employer, Middaugh. On October 6, 2011, T.A.G. was transported to Middaugh's business, Bright Ideas, also located in Indianapolis.

Also on October 6, 2011, Granberry, accompanied by his father, John Granberry, Sr. ("John"), went to Coffy's home to see T.A.G. Finding no one home, the two went to Bright Ideas and asked to speak with T.A.G., Coffy, or Middaugh. After Granberry was initially told none of these individuals were present, Middaugh came out to speak with Granberry and John; Middaugh did not disclose T.A.G.'s whereabouts.

Granberry called 911 to report T.A.G. as a missing child. Several police officers arrived, and it was eventually determined that T.A.G. was inside Bright Ideas. Police officers spoke with T.A.G., and T.A.G. later told Granberry that Middaugh and an otherwise unknown individual named Vivian had attempted to coerce her into accusing Granberry of abuse. Middaugh made statements to police based upon information Coffy had provided her that caused police to become concerned about the possibility of child abuse having occurred. As a result, Police contacted Marion County Child Protective Services ("CPS").

After CPS arrived, various family members were interviewed by CPS. Heidi was contacted and transported to Bright Ideas from Community North Hospital, and after CPS

3

concluded concerns about child abuse were unsubstantiated, T.A.G. left with Granberry, Heidi, and John.

A police report was subsequently filed that quoted statements by Middaugh and others. The document inaccurately reported Middaugh's name and relationship to the parties, and inaccurately reported the name of Middaugh's business and the nature of the business.

On August 13, 2012, proceeding *pro se* and alleging as fact the events related above, Granberry filed suit. On February 12, 2013, he filed a second amended complaint, which set forth thirteen substantive claims for relief against the Defendants, alleging the Defendants were liable to Granberry for damages arising from criminal confinement (Count I), interference with custody (Count II), false identity statements (Count III), false report of child abuse (Count IV), false informing (Count V), violation of Granberry's rights under the Fourth Amendment to the United States Constitution (Count VI), violation of Granberry's rights under the Fourteenth Amendment to the United States Constitution (Count VII), defamation *per se* (Count VIII), slander *per se* (Count IX), libel *per se* (Count X), civil conspiracy (Count XI), negligent infliction of emotional distress (Count XII), and intentional infliction of emotional distress (Count XIII). Granberry sought damages totaling $520,000, or $40,000 for each of the thirteen counts.

On April 6, 2013, the Defendants filed an answer to the second amended complaint. The Defendants' answer also asserted affirmative defenses and counterclaims against Granberry, contending that Granberry's litigation against Middaugh was groundless and

4

maintained in bad faith, and that Granberry's allegations of criminal conduct on Middaugh's part amounted to defamation *per se*.

On July 15, 2013, the Defendants moved to dismiss Granberry's case, asserting immunity from civil liability for reporting suspected child abuse under Indiana Code section 31-33-6-1.

A hearing on the motion to dismiss, as well as a motion filed by Granberry concerning a discovery request, was conducted on August 27, 2013. Also on August 27, 2013, the Defendants moved for default judgment against Granberry as to Middaugh's counterclaims.

On September 26, 2013, the trial court granted the Defendants' motion to dismiss. The trial court also granted Middaugh's motion for default judgment on the counterclaims and denied Granberry's discovery-related motions.

Also on September 26, 2013, Granberry filed a motion for relief from judgment on the trial court's order of dismissal and the default judgment.

On October 29, 2013, a hearing was conducted to determine the amount of damages to which Middaugh was entitled subsequent to the entry of judgment of default on the counterclaims. On November 7, 2013, the trial court entered its order denying Granberry's motion for relief from judgment. The same day, the trial court entered final judgment on the counterclaims, awarding $16,578.00 in attorney's fees on the Defendants' claim that Granberry's suit was frivolous.[2]

---

[2] The trial court also found that Granberry's contentions were defamation *per se* against Middaugh, but entered no award of damages on the counterclaim because no testimony or exhibits had been provided to support an award.

This appeal ensued.

## Discussion and Decision

### Dismissal

Granberry's first contention on appeal is that the trial court erred when it entered its order of dismissal.[3] As a threshold matter, Granberry contends that the trial court erred as a procedural matter when it treated the Defendants' motion to dismiss as a timely motion under Trial Rule 12(B)(6), because the Defendants had already filed an answer and counterclaim before filing their motion to dismiss.

A motion to dismiss for failure to state a claim under Trial Rule 12(B)(6) "tests the legal sufficiency of the complaint," that is, "whether the allegations in the complaint establish any set of circumstances under which a plaintiff would be entitled to relief." Putnam Cnty. Sheriff v. Price, 954 N.E.2d 451, 453 (Ind. 2011). A trial court must view the complaint in a light most favorable to the non-moving party and with every inference in that party's favor. Id. We review *de novo* an appeal from a ruling on a motion to dismiss a civil complaint. Id. "Viewing the complaint in the light most favorable to the non-moving party, we must determine whether the complaint states any facts on which the trial court could have granted relief." Id.

Granberry is correct that the Trial Rules require a stand-alone motion challenging the legal sufficiency of a complaint alone be pursued under Trial Rule 12(B)(6). However, a

---

[3] Granberry also contends that he is entitled to summary judgment on his complaint. A party generally may not raise an issue on appeal that was not previously raised in the trial court, and summary judgment must be carefully reviewed to ensure parties are not improperly denied their day in court. Oshinski v. N. Ind. Commuter Transp. Dist., 843 N.E.2d 536, 538-39 (Ind. Ct. App. 2006). We therefore decline to entertain Granberry's request on appeal for entry of summary judgment.

motion for judgment on the pleadings may be submitted "[a]fter the pleadings are closed but within such time as not to delay the trial." Ind. Trial Rule 12(C). The criteria upon which a motion for judgment on the pleadings is considered are the same as those in response to a motion to dismiss under Rule 12(B): "A motion for judgment on the pleadings should be granted only when it is clear from the face of the complaint that under no circumstances could relief be granted." Davis ex rel. Davis v. Ford Motor Co., 747 N.E.2d 1146, 1151 (Ind. Ct. App. 2001), trans. denied. As the Davis court observed, in procedural postures such as the one now before us, the distinctions between Rule 12(B) motions and Rule 12(C) motions are "blurred." Id. at 1149. However, "[a]ll pleadings shall be so construed as to do substantial justice, lead to disposition on the merits, and avoid litigation of procedural points." T.R. 8(F). Accordingly, we find no error in the trial court's acceptance of the formal caption of the motion as one for dismissal under Rule 12(B), as the substantive treatment of the motion was proper under Rule 12(C).

Turning now to the substantive aspects of the trial court's decision, the court dismissed Granberry's claims on two bases. As to Counts I (criminal confinement), II (interference with custody), III (false identity statements), IV (false report of child abuse), V (false informing), VIII (defamation *per se*), IX (slander *per se*), X (libel *per se*), XI (civil conspiracy), XII (negligent infliction of emotional distress), and XIII (intentional infliction of emotional distress), the trial court concluded that the immunity provisions of Indiana Code section 31-33-6-1 precluded Granberry from any remedy related to Middaugh's statements to police concerning possible abuse of T.A.G. As to Counts VI and VII, in which Granberry

7

alleged violations of his constitutional rights by Middaugh and Bright Ideas, the trial court concluded that Granberry had failed to assert a claim for which relief could be granted because the proper adverse party for alleged violations of constitutional rights are governmental bodies, not private parties such as the Defendants. We will address first Granberry's allegations under tort theories, and afterward turn to Granberry's claims that sound in constitutional doctrine.

*Statutory Immunity*

We turn first to the provisions of Indiana law concerning reporting child abuse. Indiana Code section 31-33-5-1 provides, "In addition to any other duty to report arising [under Title 31, Article 33 of the Code], an individual who has reason to believe a child is a victim of child abuse or neglect shall make a report as required by this article." "A person who has a duty under this chapter to report that a child may be a victim of child abuse or neglect shall immediately make an oral report to: (1) the department [of Child Services]; or (2) the local law enforcement agency." I.C. § 31-33-5-4. As another panel of this Court has observed, "[t]he statute makes clear that time is of the essence … by requiring that abuse or neglect 'shall *immediately*' be reported." Anonymous Hosp. v. A.K., 920 N.E.2d 704, 707 (Ind. Ct. App. 2010) (quoting I.C. § 31-33-5-4) (emphasis in original).

To ensure that individuals will report good-faith concerns about child abuse or neglect without fear of liability, the Indiana Code also affords immunity:

> Except as provided in [I.C. § 31-33-6-2], a person, other than a person accused of child abuse or neglect, who:

(1) makes or causes to be made a report of a child who may be a victim of child abuse or neglect;

(2) is a health care provider and detains a child for purposes of causing photographs, x-rays, or a physical medical examination to be made under IC 31-33-10;

(3) makes any other report of a child who may be a victim of child abuse and neglect; or

(4) participates in any judicial proceeding or other proceeding:

    (A) resulting from a report that a child may be a victim of child abuse or neglect; or

    (B) relating to the subject matter of the report;

is immune from any civil or criminal liability that might otherwise be imposed because of such actions.

I.C. § 31-33-6-1. Immunity from liability "does not attach for a person who has acted maliciously or in bad faith." I.C. § 31-33-6-2. "A person making a report that a child may be a victim of child abuse or neglect or assisting in any requirement of this article is presumed to have acted in good faith." I.C. § 31-33-6-3. As the A.K. Court observed, reporting of abuse "without delay does not support an inference of bad faith. Instead, it suggests the opposite." A.K., 920 N.E.2d at 707.

Here, the substance of Granberry's allegations are that Coffy told Middaugh that T.A.C. was a victim of child abuse and, as a result, Middaugh informed police officers—whom Granberry himself had called to Bright Ideas—of the abuse allegation. This in turn led to a brief CPS investigation that found the report unsubstantiated. Granberry further alleged that Coffy is well-known in the community for her dishonesty and malice. Taking these together, then, Granberry's complaint would appear to argue that Middaugh should

9

have known Coffy's expressed concern about abuse of T.A.C. was false. Thus, Granberry alleges that Middaugh's report to police was made in bad faith so that Middaugh was not entitled to the presumption in Section 31-33-6-3 of having made a good-faith report of child abuse or neglect. Accordingly, Granberry argues, Middaugh was also not entitled to immunity from liability under Section 31-33-6-1.

We cannot conclude that this set of facts, as pleaded and with all inferences in favor of Granberry as the non-movant, is sufficient to defeat Middaugh's assertion of immunity under the child abuse reporting statutes. Middaugh's immediate report of child abuse to police actively on her business's premises, after having received information of abuse from an employee who had—whether or not with Granberry's permission—taken care of T.A.C. when the child's mother was hospitalized after a suicide attempt, does not give rise to an inference that Middaugh was acting with bad faith. To the extent Granberry's complaint relies upon the need to establish bad faith in Middaugh's report to defeat any claim of immunity as a result of Coffy's alleged bad reputation, we cannot conclude he has pleaded facts that overcome the presumption of good-faith reporting. This is sufficient to dispose of Counts III, IV, V, VIII, IX, X, and XI, all of which have their basis in Granberry's contentions concerning Coffy's trustworthiness and Middaugh's alleged bad faith reporting.

*Standing as to Count I*

Granberry's complaint also fails to allege facts sufficient to state a claim for relief as to Count I, criminal confinement, because the alleged victim of the criminal confinement is not Granberry himself, but T.A.C. Indiana courts have long held that when a child is injured

10

by a tort, two causes of action accrue: one in favor of the child for the injuries, and one in favor of the child's parent for loss of service. Forte v. Connerwood Healthcare, Inc., 745 N.E.2d 796, 802 (Ind. 2001). The right of action of a parent for loss of services is an action in the nature of a property right, not an action for personal injury. Id. A cause of action for personal injury to a child is "owned by the child himself, and inure[s] to his benefit alone." Id. at 803. "The parent can only sue for an injury to his child occasioning loss of service. The child must sue for other injuries." Boyd v. Blaisdell, 15 Ind. 73, 76 (1860).

Under Count I, Granberry does not seek damages on T.A.C.'s behalf; he seeks them for himself. He does not allege loss of services from T.A.C. Accordingly, Granberry's claim under Count I was properly dismissed by the trial court.

*Cause of Action under Count II*

Count II, which alleges interference with custody, was also properly dismissed. Granberry contended that Middaugh violated Indiana Code section 35-42-3-4(b), which provides:

> A person who with the intent to deprive another person of custody or parenting time rights:
>
> (1) knowingly or intentionally takes;
>
> (2) knowingly or intentionally detains; or
>
> (3) knowingly or intentionally conceals;
>
> a person who is less than eighteen (18) years of age commits interference with custody, a Class C misdemeanor. However, the offense is a Class B misdemeanor if the taking, concealment, or detention is in violation of a court order.

11

Granberry does not contend through cogent argument and citation to authority that the crime of interference with custody gives rise to an actionable tort. See Ind. Appellate Rule 46(A)(8). And we find no authority under Indiana law to support that proposition. Accordingly, we conclude that the trial court properly dismissed Count II for failure to state a claim upon which relief could be granted.

*Fourth and Fourteenth Amendment Claims*

We turn now to Counts VI and VII, in which Granberry alleged violations of his rights under the United States Constitution. In Count VI, Granberry alleged that Middaugh, an individual known only as "Vivian," and police engaged in an unreasonable seizure of T.A.G. because Middaugh's report of suspected child abuse was unsubstantiated. The Fourth Amendment to the United States Constitution governs searches and seizures as those activities may be carried out by the government. As the trial court observed, the Fourth Amendment to the United States Constitution by its own terms "protects individual privacy against certain kinds of government intrusion," but does not merely protect privacy and does not create a right to privacy. Katz v. United States, 389 U.S. 347, 350 (1967).

"'A search or seizure by a private party does not implicate the Fourth Amendment.'" Bone v. State, 771 N.E.2d 710, 714 (Ind. Ct. App. 2002) (quoting U.S. v. Shahid, 117 F.3d 322, 325 (7th Cir. 1997)). To obtain relief from a private individual under federal civil rights laws, a plaintiff must present "evidence of a concerted action between a state actor and that individual," K.M.K. v. A.K., 908 N.E.2d 658, 662 (Ind. Ct. App. 2009) (quoting Fries v. Helsper, 146 F.3d 452, 457 (7th Cir. 1998)) (quotation marks omitted), trans. denied, or must

12

demonstrate that the private individual was acting as an agent for the government. Bone, 771 N.E.2d at 714.

Granberry does not direct his complaint toward police officers. His suit is solely against certain private actors, and he does not indicate how Middaugh may have been acting under color of or in collaboration with state actors to deprive him of T.A.G.'s services or T.A.G. of her liberty. Rather, he accuses Middaugh of providing false information to police, and makes a bald claim that police acted to conceal her falsehood based upon claimed errors in the police report. This is not sufficient to state a claim against Middaugh as either a private individual undertaking concerted action with police, or of a private individual acting as an agent for police.

As to Count VII, we note that "the [Fourteenth] Amendment affords no shield" against private conduct, "no matter how unfair that conduct may be." Nat'l Collegiate Athletic Ass'n v. Tarkanian, 488 U.S. 179, 191 (1988). This, again, is based in the need to carefully adhere to the state action requirement. Id. Granberry alleges in his complaint that Middaugh's refusal to allow him to see T.A.G. at her business's premises was done "with the aid of government authorities." (Appellant's App'x at 43.) Yet Granberry's complaint also alleges that Middaugh did not disclose T.A.G.'s presence at Bright Ideas until police questioned her as to the girl's whereabouts, and that police asked "repeatedly why she would not allow the child to leave with her father." (Appellant's App'x at 27.) Thus, Granberry's allegations in the complaint fail to establish how police extended authority to Middaugh to detain T.A.G.

13

Granberry has accordingly failed to state a claim that falls within the scope of the Fourteenth Amendment's protections of parental rights.

To the extent Granberry makes other claims—for example, that the trial court judge was biased, or that the trial court did not accord proper weight and credibility to statements in the pleadings—those claims fail or do not comport with the standard of review applicable on appeal.[4] Accordingly, we find no error in the trial court's order dismissing Granberry's suit.

### Crossclaim and Damages

Granberry also challenges the trial court's entry of default judgment against him. Indiana Trial Rule 60(B) governs motions to set aside judgments. "On motion and upon such terms as are just the court may relieve a party or his legal representative from a judgment, including a judgment by default," for reasons that include mistake, surprise, or excusable neglect, newly discovered evidence, or fraud or misconduct of an adverse party. T.R. 60(B)(1)-(3). Relief from judgment under Trial Rule 60(B) "is a matter entrusted to the trial court's equitable discretion." Citimortgage, Inc. v. Barabas, 975 N.E.2d 805, 812 (Ind. 2012). We reverse only where a trial court has abused its discretion, that is, when the decision of the trial court is clearly against the logic and effect of the facts and circumstances before it, or when the court has misinterpreted the law. Id. Default judgments are extreme remedies, and are available only where a party fails to defend or prosecute a suit. Id. "Courts should guard against the use of a default judgment as 'a trap…set by counsel to catch

---

[4] Granberry's complaint of judicial bias rests on his claim that the trial court was biased in interacting with him during argument and entering adverse rulings against him. Yet an adverse ruling is not sufficient to show bias or prejudice, Flowers v. State, 738 N.E.2d 1051, 1060 n. 4 (Ind. 2000), and a party "must show that the trial judge's action or demeanor crossed the barrier of impartiality and prejudiced" his case. Id. at 1061. Granberry has not done so.

14

unsuspecting litigants,'" and should resolve cases on their merits whenever possible. Id. (quoting State Farm Mut. Auto. Ins. Co. v. Hughes, 808 N.E.2d 112, 116 (Ind. Ct. App. 2004)).

Granberry's argument on appeal challenging the entry of default judgment states that "counsel produced no evidence at all to support their claim save his attorney fee affidavit." (Appellant's Br. at 30.) Yet Granberry failed to file an answer to any of the Defendants' counterclaims. On appeal, he does not directs this Court to any contention that the default judgment was obtained by fraud, or that he was prejudiced by any form of "mistake, surprise, or excusable neglect." Ind. Trial Rules 60(B)(1) & (3). Rather, he asks that we look anew at evidence that he claims disposes of the case on summary judgment, and attacks as "based entirely on hearsay" the Defendants' case. (Appellant's Br. at 30.) Simply put, Granberry sets forth no basis upon which this Court may conclude that the trial court abused its discretion when it denied his motion to set aside the default judgment. We accordingly affirm the trial court's order denying that motion.

### Conclusion

The trial court did not err when it dismissed Granberry's suit. The trial court did not abuse its discretion when it denied Granberry's motion for relief from the default judgment.

Affirmed.

NAJAM, J., and PYLE, J., concur.