## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 27 2019, 9:27 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cody Cogswell
Cogswell & Associates
Fishers, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill
Attorney General

George P. Sherman
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Robert Dewayne Coleman, *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff* | August 27, 2019 <br><br> Court of Appeals Case No. 18A-CR-1640 <br><br> Appeal from the Madison Circuit Court <br><br> The Honorable David A. Happe, Judge <br><br> Trial Court Cause No. 48C04-1612-FA-2534 |

**Crone, Judge.**

Following a jury trial, Robert Dewayne Coleman appeals his convictions and forty-year executed sentence for class A felony attempted child molesting and class D felony criminal confinement. He raises claims of trial court error and prosecutorial misconduct, contends that the alleged victims' testimony was incredibly dubious, and asserts that the trial court abused its discretion during sentencing. We affirm.

## Facts and Procedural History[1]

The relevant facts most favorable to the jury's verdict are as follows. C.N. had two daughters: K.T., born in April 1996, and L.N., born in October 2001. In 2007, C.N. and L.N. began living with Coleman. Coleman began fondling L.N. when she was eight years old, beginning with her buttocks and then progressing to her breasts and genitalia. In 2010, C.N. and Coleman were married, and K.T. moved in with them. In 2012, K.T. told C.N. that Coleman had touched her inappropriately. C.N. talked to L.N., who said that Coleman had touched her inappropriately. C.N. did not go to the police at that time, but

---

[1] Indiana Appellate Rule 46(A)(6) provides that an appellant's statement of facts "shall describe the facts relevant to the issues presented for review but need not repeat what is in the statement of the case." The concluding sentence of Coleman's five-sentence statement of facts reads, "Due to the complexity and length of this brief, facts have been supplied in the argument and cited to the record [sic]." Appellant's Br. at 8. This blatant noncompliance with Rule 46(A)(6) is not well taken, especially since Coleman challenges the sufficiency of the evidence supporting his convictions under the guise of "incredible dubiosity." We admonish Coleman's counsel to comply with this rule in future appeals, no matter how damning the relevant facts might be. *See* Ind. Appellate Rule 46(A)(6)(b) ("The facts shall be stated in accordance with the standard of review appropriate to the judgment or order being appealed.").

she told Coleman that he was not allowed to be around her daughters when she was not there. In 2014, L.N. told C.N. that Coleman was still touching her inappropriately. C.N. still did not go to the police. C.N. filed for divorce in July 2015, and the divorce was finalized in September 2015. In August 2016, L.N. told C.N. that Coleman had raped her. C.N. took L.N. and K.T. to the police station to report Coleman's sexual abuse.

[3] The State charged Coleman with eight counts: count 1, class A felony attempted child molesting as to L.N.; count 2, class A felony child molesting as to L.N.; count 3, level 1 felony child molesting as to L.N.; count 4, class B felony sexual misconduct with a minor as to K.T.; count 5, class C felony sexual misconduct with a minor as to K.T.; count 6, class D felony criminal confinement as to L.N.; count 7, level 6 felony criminal confinement as to L.N.; and count 8, class D felony criminal confinement as to K.T. The State dismissed counts 3 and 7 before trial. At trial, C.N., L.N., K.T., and several other witnesses testified for the State. Coleman testified on his own behalf. The jury found Coleman guilty of counts 1 and 6 and not guilty of the remaining counts. At sentencing, the trial court found several aggravating factors, including Coleman's criminal history and his abuse of a position of trust, and found no mitigating factors. The court imposed concurrent executed sentences of forty years on count 1 and three years on count 6. Coleman now appeals. Additional facts will be provided below.

# Discussion and Decision

## Section 1 – The trial court did not clearly err in finding that the State's race-neutral basis for striking a potential juror was credible.

[4]    Coleman is African-American. During voir dire, Coleman's counsel and the prosecutor selected K.B., who appeared to be African-American, to be a juror. Shortly thereafter, it was discovered that K.B.'s aunt was a victim's advocate in the prosecutor's office and that K.B. had told her aunt that she was going to be serving on the jury. The trial court allowed Coleman's counsel to use a belated peremptory strike to remove K.B. from the jury.[2]

[5]    The parties then questioned a panel of potential jurors that included A.C., who also appeared to be African-American. Coleman's counsel told A.C.,

> The prosecutor's been real clear throughout this that sometimes they're just going to have testimony. If the Judge were to instruct you that the law is as long, as you believe that testimony beyond a reasonable doubt, do you think you could say, yeah, I believe what they said beyond a reasonable doubt, it met each element beyond a reasonable doubt, what they said, and I'll have to say guilty cause that's what the law says? Do you have any problem with following the law like that?

Tr. Vol. 3 at 8. A.C. replied, "Oh, I don't know. Just – I mean, it's – I think it'd take some pretty solid proof." *Id*. Counsel asked A.C., "[D]o you believe

---

[2] Coleman misrepresents the record in claiming that "the State exhausted their [sic] preemptory [sic] strikes to strike all the African-American venirepersons during *voir dire*." Appellant's Br. at 9.

that sometimes solid proof could be just testimony?" *Id*. at 8-9. A.C. replied, "I don't know." *Id*. at 9. Counsel acknowledged that the prosecutor

> addressed it specifically that it's a much tougher case to prove without DNA and physical evidence. They know that. Everybody in here knows that. But the crux of it is, and the crux of our conversation here and what they ask you is, but if it's not there. And the law says, if you believe it beyond a reasonable doubt that one witness is enough, are you able to follow the law?

*Id*. A.C. again replied, "I don't know." *Id*.

[6] Counsel asked, "What if the Judge instructs you to follow the law? Are you going to disregard what he says?" *Id*. A.C. replied, "I'll try to do that. I'm just saying I don't know if – I don't know." *Id*. Counsel stated, "I'm not saying, just because they testify, you have to believe them beyond a reasonable doubt. Your job is to examine their testimony and determine if you feel like that's beyond a reasonable doubt. Does – does that make more sense to you?" *Id*. at 9-10. A.C. replied, "I understand what you're saying. I just, you know, I don't know if –[.]" *Id*. at 10. Counsel suggested, "Don't know 'til you're there[,]" and A.C. replied, "Pretty much." *Id*. Counsel asked, "But are you telling me that you can follow the law?" A.C. replied, "No, I try to follow the law but still, I mean, you know, I – don't know until –[.]" *Id*. at 10. Counsel asked if A.C. was "going to be able to be fair[,]" and he replied, "Yeah, I think I could be fair. I just –[.]" *Id*. at 10. Counsel interjected, "You think you can be fair. All right." *Id*. Counsel questioned other jurors and then asked A.C., "What if, at the conclusion of the evidence, whatever that evidence may be, you think

[…] this happened and you believe it happened without any reasonable doubt, are you going to be able to say guilty?" *Id.* A.C. responded, "I don't – yeah, I could listen to the testimony, but I don't see how I can say one way or the other cause I don't, I mean, I don't know." *Id.* Counsel acknowledged that he and the prosecutor had been posing hypotheticals and said, "[I]magine that [the State] proved the case beyond a reasonable doubt, that at the end of the case that […] you have a certain degree that this did happen, and it meets the legal standard. Do you have the ability to say I vote guilty?" *Id.* at 17-18. A.C. replied, "I'd like to think so. I mean, if this was proven beyond (indiscernible)." *Id.* at 18.

[7] The prosecutor moved to strike A.C. for cause, arguing, "I know he tried but […] even when he followed with (indiscernible) beyond a reasonable doubt I guess I could try, but he never said he could, he said I don't know. I could follow the law, (indiscernible) testimony would not be enough." *Id.* at 20. Coleman's counsel responded, "I think he was rehabilitated enough with that, I mean, he's not for cause, Judge. I mean he – he said he would follow the law.[…] I specifically went to him and flipped it and made it could you find him guilty and he said he could." *Id.* The prosecutor remarked, "He said he would try." *Id.* The trial court replied, "I think that his answers, um, well, certainly have characterized as hesitant, he fell short of saying unequivocally I wouldn't follow the law or couldn't follow the law. He did not get that far. So, I'll deny the State's cause challenge as to [A.C.]" *Id.* at 20-21. The court

ultimately excused A.C., apparently in response to a peremptory strike exercised by the prosecutor. *Id*. at 25.

[8] The trial court and the parties then questioned another potential juror individually regarding his acquaintance with Coleman, and the court granted the State's request to strike him for cause. *Id*. at 29. Coleman's counsel then stated,

> Judge, I need to make record, um, on [A.C.] [A.C.] was the only African-American juror that, um, we had by appearance. And the State used a strike on him after attempting to get him struck for cause. I wasn't able to address that at the bench cause we moved right in to [questioning the other juror]. I just think we need to have a *Batson v. Kentucky* hearing on that [….] to make the record clear on it.

*Id*. (underlining replaced with italics). The court asked for a response from the prosecutor, who stated,

> I think the argument that we made for cause he was the only juror who said in that group that said I need more. It requires testimony and more. Everyone that said that, we have struck. There has not been a single juror that has said – made that statement that we have not struck. Said I don't know if I'll follow the law, it takes pretty solid proof, he said that repeatedly. The Court said that it did not raise to cause. The State believes it did or we wouldn't have raised that, but understanding the Court's position, he made enough. We said can you follow the law. Arms crossed and he says I think so but then he said I don't know, I try to follow the law but I still don't know. And again, more – more than once he said it requires testimony plus more. He's the only individual that said that. Race had nothing to do

with it. That's the crux issue that the State is focusing on. He said that and that's the reason he was excused.

*Id*. at 31.

[9]    The court replied,

> [I]t's debatable whether there's been a pattern of racial discrimination shown in the State's strikes because the State did not exercise a peremptory as to [K.B.] who appeared to be of African-American heritage, and did as to [A.C.] The Court stands by its ruling that there was not cause established for [A.C.], but I did I believe characterize on the record his responses as extremely hesitant. He seemed like he was really struggling with the concept of having to apply the law and say that someone was guilty, even if the evidence appeared to convince him beyond a reasonable doubt. So the State does not have to keep on a juror who is so extremely hesitant about being able to discharge their duty to enter a conviction if there is overwhelming proof beyond a reasonable doubt shown. So I think here there is abundant proof that is race neutral as to why [A.C.] was removed. And, uh, I will overrule the *Batson v. Kentucky* challenge. All right. Any other record that we can make now before we go back and deal with our next panel?

*Id*. at 31-32 (underlining replaced with italics). Both parties said no.

[10]    On appeal, Coleman contends that the trial court erred in denying his *Batson* challenge. In *Batson v. Kentucky*, the United States Supreme Court stated, "Purposeful racial discrimination in selection of the venire violates a defendant's right to equal protection because it denies him the protection that a trial by jury is intended to secure." 476 U.S. 79, 86 (1986). "The exclusion of

even a sole prospective juror based on race, ethnicity, or gender violates the Fourteenth Amendment's Equal Protection Clause." *Addison v. State*, 962 N.E.2d 1202, 1208 (Ind. 2012).

[11] "A defendant's race-based *Batson* claim involves a three-step process. At the first stage the burden is low, requiring that the defendant only show circumstances raising an inference that discrimination occurred. This is commonly referred to as a prima facie showing." *Id*. (citation and quotation marks omitted). Where, as here, the State offers a race-neutral explanation for a peremptory challenge "and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing of purposeful discrimination becomes moot." *Id*. at n.2 (brackets omitted).

[12] "At the second stage, if the first stage showing has been satisfied, then the burden shifts to the prosecution to offer a race-neutral basis for striking the juror in question." *Id*. at 1209 (quotation marks omitted). "Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral. Although the race-neutral reason must be more than a mere denial of improper motive, the reason need not be particularly persuasive, or even plausible." *Id*. (citations and quotation marks omitted).

[13] "[A]t the third stage, the defendant may offer additional evidence to demonstrate that the proffered justification was pretextual." *Id*. at 1210. The trial court must then determine whether, in light of the parties' submissions, the

defendant has shown purposeful discrimination. *Id*. at 1209. "Although the burden of persuasion on a *Batson* challenge rests with the party opposing the strike, the third step—determination of discrimination—is the duty of the trial court." *Id*. at 1210 (citations and quotation marks omitted). "The trial court evaluates the persuasiveness of the step two justification at the third step. It is then that implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination." *Id*. (quotation marks omitted). "The issue is whether the trial court finds the prosecutor's race-neutral explanation credible." *Id*. "The trial court's conclusion that the prosecutor's reasons were not pretextual is essentially a finding of fact that turns substantially on credibility. It is therefore accorded great deference." *Highler v. State*, 854 N.E.2d 823, 828 (Ind. 2006). We will not overturn it unless we find it clearly erroneous. *Cartwright v. State*, 962 N.E.2d 1217, 1221 (Ind. 2012).

[14]    Here, the State offered a race-neutral basis for striking A.C. Coleman offered no additional evidence to demonstrate that the State's basis was pretextual, and the trial court found that the basis was credible. On appeal, Coleman argues,

> The issue with [A.C.] was not whether he would be impartial, but that he had struggled with a hypothetical question he was being asked to screen him. However, when he was asked if he could convict if he believed the state had proven their [sic] case, [A.C.] replied, "I'd like to think so." In fact, nothing in the record reflects that [A.C.] was hesitant.

Appellant's Br. at 14 (citation to transcript omitted). We disagree. The foregoing excerpts conclusively demonstrate that A.C. was hesitant to follow

the law and convict Coleman based solely on testimony even if the State proved his guilt beyond a reasonable doubt. In sum, we cannot conclude that the trial court clearly erred in finding the State's race-neutral explanation credible.

## Section 2 – Coleman waived any error regarding the trial court's decision not to remove Guardian Angels from the courtroom.

[15] The jury was excused for lunch after the State's first witness testified. Coleman's counsel complained to the trial court about a group of Guardian Angels who had been observing the trial; he described them as "a biker group" that "come[s] in from time to time in support of molest victims in molest cases." Tr. Vol. 3 at 198, 194. Counsel stated, "[T]hey're still wearing their hats and their bandanas in the courtroom. […] I guess they're not subject to that restriction of gentleman [sic] removing hats in the courtroom." *Id*. at 195. Counsel opined that "their sheer number is intimidating to the jury and – and could influence their decision, and could influence their ability to make an accurate decision based upon the facts. We don't need twenty-five (25) people in here." *Id*. The prosecutor replied, "[T]hey've not refused a single order, they've not been disruptive, it's a public courtroom, they're allowed to be in there." *Id*. at 196. Coleman's counsel responded, "Judge, I […] am not overly concerned with them being in the courtroom.[…] I don't have a problem as long as they're not going in private rooms with a witness." *Id*. at 198.

[16] The trial court stated,

This is a situation where […] there's a public right of access to the courtroom,[3] but there's also the court with its inherent right to control what happens in the courtroom in order to make sure that there's no violation of either sides [sic] right to a fair trial. Um, the presence of the group itself is not a problem. They have an interest in this case and they have a right to assert that interest by being here and seeing firsthand what happens with this branch of government. So, I'm not going to exclude them. I don't think that's appropriate. I do think it is appropriate to ask them to remove any hats or head covering out of respect for the jurors and the process, and I'm going to do that.

*Id*. at 200. The court then addressed several collateral matters and asked, "Any other specific requests from either side?" *Id*. at 202. Coleman's counsel made no specific request or further objection regarding the Guardian Angels. Before the jury returned, the court told the spectators,

[W]e have certain rules of decorum here in the courtroom. I haven't seen any breaches of that decorum but just as an explanation I want to say that, um, out of respect for the jury we always expect people to rise when the jury comes in and show that respect to them. We expect you to dress appropriately for the courtroom, and that includes removing any head coverings when you do come into the courtroom. So if I know anyone violating that I will make it a point of advising you of that and try to, in a low key way, give you a chance to correct that.

---

[3] *See* IND. CONST. art. 1, § 13 ("In all criminal prosecutions, the accused shall have the right to a public trial …."); Ind. Code § 5-14-2-2 ("Criminal proceedings are presumptively open to attendance by the general public.").

*Id*. at 206-07.

[17]     Coleman now asserts that the trial court "committed reversible error in failing to remove the Guardian Angels from the Court during trial." Appellant's Br. at 15 (emphasis omitted).[4] "A party's failure to object to, and thus preserve, an alleged trial error results in waiver of that claim on appeal." *Batchelor v. State*, 119 N.E.3d 550, 556 (Ind. 2019). "The purpose of the contemporaneous objection rule is to promote a fair trial by preventing a party from sitting idly by and appearing to assent to an offer of evidence or ruling by the court only to cry foul when the outcome goes against him." *Robey v. State*, 7 N.E.3d 371, 379 (Ind. Ct. App. 2014), *trans. denied*. Here, Coleman assented to the trial court's ruling on his objection to the presence of the Guardian Angels (and was "not overly concerned" with them being in the courtroom in the first place). Consequently, he has waived any alleged error on appeal.

---

[4] Coleman asserts,

> The notion may be to look at "The Guardian Angels" as a victim's rights support group however, their appearance, their *colors* by way of their hats, bandanas, and clothing, should be seen no differently than that of Ku Klux Klan members sitting in the court room looking at jurors with their hoods in plain view or gang members showing colors in a criminal hearing where a gang member were on trial.

Appellant's Br. at 18 (underlining omitted). Coleman made no factual record at trial regarding the group's appearance beyond mentioning the hats and bandanas that the trial court ordered them to remove, so we must decline his invitation to presume that their mere presence in the courtroom was in any way intimidating to the jury or otherwise prejudicial to him.

## Section 3 – Coleman has made no cognizable claim of error regarding the alleged "corroboration" of K.T.'s and L.N.'s allegations.

[18] At trial, Anderson Police Department Officer Josh Senseney testified that C.N. brought K.T. and L.N. to the police station in August 2016 to report Coleman's sexual abuse. He testified that he interviewed K.T., who was then an adult, and that L.N. was interviewed at a facility called Kids Talk. On cross examination, Coleman's counsel asked if Officer Senseney "had a discussion with [K.T.] about what it's going to take to prove this case[.]" Tr. Vol. 3 at 185. The officer replied that he did not remember. Coleman's counsel showed him the transcript of his interview with K.T. to refresh his memory and read aloud the officer's statement to K.T.: "We need to corroborate our stories here and get things together to where it if [sic] goes to court a jury will understand it[.]" *Id.* at 186. When asked to explain what he meant by "corroborate," Officer Senseney replied, "I meant that we needed – I needed to fully understand what she was trying to explain to me so that if it did go to trial the jury would understand it." *Id.* at 187. When asked if he meant that K.T. and L.N. "needed to make their stories similar[,]" he replied, "Absolutely not." *Id.*

[19] On appeal, Coleman complains that "the trial court did nothing to admonish the apparent coached corroboration of K.T.'s and L.N.'s statements" and asserts that the alleged corroboration "should be likened to prosecutorial misconduct to have severely prejudiced [him]." Appellant's Br. at 35. But Coleman requested no admonishment and made no objection at trial, and he

has not claimed (or established) fundamental error on appeal. *Cf. Jerden v. State*, 37 N.E.3d 494, 498 (Ind. Ct. App. 2015) (stating that "where a claim of prosecutorial misconduct has been waived for a failure to preserve the claim of error[,] … the defendant must establish not only the grounds for prosecutorial misconduct but also that the prosecutorial misconduct constituted fundamental error[,]" which is "an extremely narrow exception to the waiver rule where the defendant faces the heavy burden of showing that the alleged errors are so prejudicial to the defendant's rights as to make a fair trial impossible.") (quotation marks omitted). Therefore, we do not address his argument further.[5]

## Section 4 – Coleman has failed to establish that the prosecutor committed misconduct that resulted in fundamental error.

[20] Coleman argues that several of the prosecutor's comments during closing argument constitute misconduct. We need not address this argument in any detail because Coleman failed to object to those comments at trial, and he has failed to establish that they amounted to both prosecutorial misconduct and fundamental error. *See id.*[6] He first claims that some of the prosecutor's

---

[5] Coleman asserts that the alleged corroboration "should be used to bolster and support" his argument that K.T.'s and L.N.'s testimony was incredibly dubious, which we address below. Appellant's Br. at 35. We disagree, not least because the jury could have believed Officer Senseney's testimony that he did not use "corroborate" in the sense that Coleman claims. *Compare* "corroborate" ("to support with evidence or authority: make more certain") *with* "coordinate" ("to bring into a common action, movement, or condition: HARMONIZE"). MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/corroborate, -/coordinate (last visited Aug. 8, 2019).

[6] Coleman prefaces his argument with an extensive quotation from *Ryan v. State*, 9 N.E.3d 663 (Ind. 2014), regarding fundamental error. We advise Coleman that copying lengthy excerpts from judicial opinions and pasting them into one's brief is not a valid substitute for making a cogent legal argument.

statements violated the trial court's order in limine, but he does not specify what the order said or explain how those statements violated it. On appeal, "we will not search the record to find a basis for a party's argument[.]" *Lee v. State*, 91 N.E.3d 978, 990 (Ind. Ct. App. 2017), *trans. denied* (2018). He also argues that the prosecutor made inaccurate statements regarding his broken collarbone and the date of L.N.'s interview at Kids Talk, but these arguments are so confusing as to be unintelligible. Coleman further contends that the prosecutor "testified and vouched for L.N. over and over again[,]" but he offers no details or cogent argument on this point. Appellant's Br. at 39. Coleman's remaining arguments are similarly undeveloped and similarly meritless.

## Section 5 – Coleman has failed to establish that K.T.'s and L.N.'s testimony was incredibly dubious.

[21] Coleman also contends that K.T.'s and L.N.'s testimony was incredibly dubious and therefore his convictions must be reversed for insufficient evidence. Coleman's invocation of the "incredible dubiosity" rule is misplaced. "Under our 'incredible dubiosity' rule, we will invade the jury's province for judging witness credibility only in exceptionally rare circumstances." *McCallister v. State*, 91 N.E.3d 554, 559 (Ind. 2018). "The evidence supporting the conviction must have been offered by a sole witness; the witness's testimony must have been coerced, equivocal, and wholly uncorroborated; it must have been 'inherently improbable' or of dubious credibility; and there must have been no circumstantial evidence of the defendant's guilt." *Id*. (quoting *Moore v. State*, 27 N.E.3d 749, 755 (Ind. 2015)).

[22] We first observe that Coleman's numerous criticisms of K.T.'s testimony are irrelevant because he was acquitted of all charges related to her. We also observe that Coleman has failed to establish that L.N.'s testimony was coerced, equivocal, or inherently improbable. He contends that L.N.'s pretrial statements and trial testimony were inconsistent, but he fails to specify what those alleged inconsistencies were. In any event, "discrepancies between a witness's trial testimony and earlier statements made to police and in depositions do not render such testimony 'incredibly dubious.'" *Holeton v. State*, 853 N.E.2d 539, 541-42 (Ind. Ct. App. 2006).

[23] It is well settled that a conviction, including a conviction for child molesting, may rest solely upon the uncorroborated testimony of the victim, and that we will neither reweigh evidence nor judge witness credibility on appeal. *Rose v. State*, 36 N.E.3d 1055, 1061 (Ind. Ct. App. 2015). The State observes that "Coleman fails to point to any element of either offense that was not established at trial." Appellee's Br. at 23. Coleman's argument is essentially a request to reweigh evidence and judge witness credibility, which we may not do. Therefore, we affirm his convictions for attempted child molesting and criminal confinement.

## Section 6 – Coleman has failed to establish that the trial court abused its discretion at sentencing.

[24] Finally, we address Coleman's argument regarding his forty-year executed sentence, which ultimately winds its way to his assertion that the trial court

abused its discretion in "using his scant criminal history[7] as an aggravating factor" and in "failing to find any mitigating factor." *Id*. at 46.[8] "Sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion." *Hape v. State*, 903 N.E.2d 977, 1000 (Ind. Ct. App. 2009), *trans. denied*. "An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn therefrom." *Id*. "We can review the presence or absence of reasons justifying a sentence for an abuse of discretion, but we cannot review the relative weight given to these reasons." *Id*.[9]

[25] Initially, we note that "[e]ven a limited criminal history can be considered an aggravating factor." *Atwood v. State*, 905 N.E.2d 479, 488 (Ind. Ct. App. 2009),

---

[7] According to Coleman's presentence investigation report, he was adjudicated a delinquent for criminal mischief in 1997 and for disorderly conduct in 1999, and as an adult he pled guilty to class B misdemeanor disorderly conduct in 2003.

[8] We reject Coleman's assertion that the trial court used his "continued declaration of innocence against him at sentencing because he did not express remorse." Appellant's Br. at 43. The trial court merely remarked,

> There is no expression of remorse, which would be inconsistent with the defendant maintaining his innocence. Again, as the State well put it, it's not an aggravator to maintain your innocense [sic] and go to trial, but it does sometimes put you in a position where you can't say I didn't do anything but I'm very sorry for what I did. It's not consistent.

Tr. Vol. 5 at 74.

[9] Following his abuse of discretion claims, Coleman makes a passing reference to Indiana Appellate Rule 7(B), which provides that we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence is inappropriate in light of the nature of the offense and the character of the offender. Coleman makes no cogent Rule 7(B) argument and therefore has waived any claim regarding the appropriateness of his sentence. *Perry v. State*, 921 N.E.2d 525, 528 (Ind. Ct. App. 2010). "We remind counsel that whether a trial court has abused its discretion by improperly recognizing aggravators and mitigators when sentencing a defendant and whether a defendant's sentence is inappropriate under Indiana Appellate Rule 7(B) are two distinct analyses." *Hape*, 903 N.E.2d at 1000 n.12.

*trans. denied*. Thus, Coleman has failed to establish an abuse of discretion in this regard. And as for mitigators, we note that "[o]ne way in which a court may abuse its discretion is by entering a sentencing statement that omits mitigating circumstances that are clearly supported by the record and advanced for consideration." *Hape*, 903 N.E.2d at 1000. "[T]o show that the trial court abused its discretion in failing to find a mitigating factor, the defendant must establish that the mitigating evidence is both significant and clearly supported by the record." *Norris v. State*, 113 N.E.3d 1245, 1254 (Ind. Ct. App. 2018), *trans. denied* (2019). "[A] trial court is not obligated to accept a defendant's claim as to what constitutes a mitigating circumstance." *Hape*, 903 N.E.2d at 1000. Indeed, a trial court does not abuse its discretion by declining to find alleged mitigators that are "highly disputable in nature, weight, or significance." *Jackson v. State*, 973 N.E.2d 1123, 1131 (Ind. Ct. App. 2012) (quoting *Rawson v. State*, 865 N.E.2d 1049, 1056 (Ind. Ct. App. 2007), *trans. denied*), *trans. denied*.

[26] At the sentencing hearing, Coleman's counsel advanced no specific mitigators for consideration. On appeal, Coleman refers to testimony from his work supervisor and fiancée (with whom he shares a young child) regarding his work ethic and family involvement, but he has failed to establish that these are significant mitigating factors and that the trial court abused its discretion in disregarding them. *Cf. Newsome v. State*, 797 N.E.2d 293, 301 (Ind. Ct. App. 2003) ("Many people are gainfully employed such that this would not require the trial court to note it as a mitigating factor or afford it the same weight as

Newsome proposes."), *trans. denied* (2004); *Purvis v. State*, 87 N.E.3d 1119, 1130 (Ind. Ct. App. 2017) ("While [Purvis] claims to have a close relationship with his family, he provides no reason why this mitigates any of his behavior."), *aff'd on reh'g* (2018). Therefore, we affirm Coleman's sentence.

[27] Affirmed.

Baker, J., and Kirsch, J., concur.